### BRIGGS et al. v. KAISLING (two cases).

### KAISLING v. BRIGGS.

(Court of Appeals of District of Columbia. Submitted January 15, 1923.
Decided April 3, 1923.)

Nos. 1552–1554.

1. **Patents ⊂⟹91 (4)—Junior applicant held to have shown reduction to practice before senior applicant's date of conception.**

Evidence in interference proceedings *held* to show a reduction to practice by the junior applicant before the senior applicant's date of conception.

2. **Patents ⊂⟹101—Inventor is entitled to inherent function of device, not appreciated at application.**

Even though the particular advantage of a function of the device was not appreciated at the time of application the inventor cannot be deprived of it, if it is an inherent function of the device as designed and constructed; much less can he be deprived of it, when he reconstructs his device to emphasize the advantage.

3. **Patents ⊂⟹109—Sole inventor does not lose priority in interference proceedings, because application is joint.**

Where a joint application is involved in interference proceedings, the sole object of which, under Rev. St. § 4904 (Comp. St. § 9449) is to determine the question of priority of invention, the prior inventor is not to be deprived of his priority, because the application was in the joint name of himself and another, while the Patent Office found he was the sole inventor, but in such case he should be given an opportunity, by amending his application, or by filing a new application, to protect his rights as sole inventor.

4. **Patents ⊂⟹106(2)—Junior applicant held entitled to claim for simultaneous operation of electric switch.**

Where a count in interference, calling for a simultaneous operation of an electric switch arm and the actuation of a supplemental switch, was taken from another application, in which no stress was laid on the word "simultaneous," the prior inventor can make the count, though his exhibit required the key which operated the switch to be turned part way, and then pushed farther in and turned the rest of the way, to operate the supplemental switch.

Appeal from the Commissioner of Patents.

Three separate interference proceedings between Stephen F. Briggs in one case, and Stephen F. Briggs and another in the other two cases, and William Kaisling. From the judgment awarding priority to Briggs in one case, and to Kaisling in the other two cases, the losing parties appeal in each case. Decision awarding priority to Briggs affirmed, and those awarding priority to Kaisling reversed.

Joseph H. Milans and Calvin T. Milans, both of Washington, D. C., for Briggs and Jacobi.

G. A. Yanochowski, of Chicago, Ill., for Kaisling.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. These are appeals from decisions of the Patent Office in interference proceedings, and each involves an elec-

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

trical switch of the type used to control the lighting, ignition, and other circuits of a motor vehicle. A single record embraces all the evidence. Kaisling has one application involved, while the Briggs & Stratton Company is the assignee of all adverse interests covered by the other applications. It is apparent, therefore, that in substance and effect this is but a single case.

We first will consider Kaisling's contentions in appeal No. 1553, wherein the tribunals of the Patent Office concurrently awarded priority to Briggs. There are here involved four claims, of which the first and fourth are illustrative, as follows:

"1. A switch comprising a base having contacts, a rotary switch member having contact means for engaging the contacts, a removable key for controlling the actuation of said switch member, and other switch contacts actuated by the removable key."

"4. A lighting switch and an auxiliary switch for automobiles and the like, a removable actuating member for said auxiliary switch, and means controlled by said actuating member for rendering said lighting switch inoperative."

Kaisling has been accorded August or early September of 1913 as his earliest date of conception, and his filing date of December 15, 1913, as his date of constructive reduction to practice, and these dates are unchallenged. Two applications of Briggs are here involved, dated March 8 and 15, 1915, respectively.

The Examiner of Interferences reviewed the evidence to the effect that in December of 1912 and February of 1913 drawings were made for Briggs, which were produced and identified by the party who made them and by the model maker, who built two switches (Exhibits Nos. 4 and 15) from them. These switches were shop-tested, and early in 1913 one like Exhibit No. 15 was installed on a car in Detroit, where it was successfully used for three or four months. While the Examiner was not satisfied with the evidence concerning this test, he was satisfied that a reduction to practice had been proven by the shop tests, and therefore awarded Briggs the date of March, 1913, for conception and reduction to practice. On appeal, the Examiners in Chief expressed themselves as convinced that the practical test in Detroit amounted to reduction to practice, and in this conclusion the Commissioner concurred.

[1] We think this conclusion clearly right. In the first place, Exhibits Nos. 4 and 15 bear no evidence of having been tampered with, and the evidence concerning their construction is straightforward and free from any taint of suspicion. They represented, at the time they were made, the limits of the progress made by Briggs in the art. It is in evidence that a switch like Exhibit No. 15 was taken to Detroit by Mr. Briggs for the purpose of interesting the F. B. Electric & Manufacturing Company. Mr. John W. Fitzgerald, who was president and chief engineer of that company, a very intelligent and disinterested witness, testified to the installation and test of a switch which looked and operated like Exhibit No. 15, and there was evidence of a corroborative character which has been reviewed by the tribunals of the Patent Office. Mr. Fitzgerald testified positively that this switch was on the car three or four months. He described its operation in detail,

stated that he rode in the car a number of times, and said that the switch "did the work for which it was designed without any trouble." We regard the evidence concerning the identity of these exhibits and the reduction to practice of the invention as convincing.

[2] After the completion of Exhibit No. 4, it was discovered that by partially inserting the key the switch could be turned to either position. Advantage was taken of this discovery in Exhibit No. 15, by so arranging the lock that the ignition switch could be moved by rotating the key in the same direction required to lock or unlock the switch. It therefore is apparent that whatever advantage springs from this change inures to the benefit of Briggs. Even though the particular advantage had not been appreciated at the time, nevertheless, had it been an inherent function of the device as designed and constructed, the inventor could not have been deprived of it. Morgan Engineering Co. v. Alliance Machine Co., 176 Fed. 107, 100 C. C. A. 30. Much less can an inventor be deprived of such advantage when he so reconstructs his device as to emphasize this advantage. We agree with the Patent Office, therefore, that Exhibit No. 15 clearly reads upon each of the claims of this particular issue.

Appeal No. 1554 involves the same application of Kaisling and a joint application of Briggs and Jacobi, the single count reading as follows:

"In a combination switch, a removable handle, switch contacts, a movable member for co-operation with said switch contacts, said movable member being controlled by said handle, and other switch contacts controlled by the turning of the attached handle."

Exhibits Nos. 4 and 15, heretofore discussed, were relied upon by the joint applicants. The Patent Office tribunals entertained no doubt that these exhibits disclosed the invention expressed in this count, but, being of the view that the suggestions of Jacobi did not rise to the dignity of invention—in other words, that Briggs was the sole inventor—awarded priority to Kaisling, notwithstanding that the invention clearly had been reduced to practice by Briggs prior to the entry of Kaisling into the field.

[3] The sole object of an interference proceeding is "to determine the question of priority of invention." R. S. § 4904 (Comp. St. § 9449). Recognizing this, we ruled in the Roberts Case, 263 Fed. 646, 49 App. D. C. 250, that, where a joint application filed in good faith by two inventors embraces an invention of which one of the applicants is the sole inventor, the Patent Office should permit the real inventor to correct the mistake and thus obtain recognition of his invention. We said:

"To prevent a possible failure of justice, the present application should have been considered as a continuation of the abortive application. As already suggested, we perceive no reason why the mistake could not have been rectified by a simple amendment, but in any event the sole inventor should not be deprived of his day in court by the raising of artificial barriers against him. He claimed his invention, and, through mistake, gave his son credit where no credit was due. The elimination of the son ought not to deprive the father, the sole inventor, of the benefit of his original application; and we so rule."

Again, in Bijur v. Kennington, 278 Fed. 313, 51 App. D. C. 230, we ruled that where a joint application was filed for a patent on which it was decided that one of the applicants was the sole inventor, he was entitled to the date of the joint application for reduction to practice, as his sole application, being an amendment of the joint application, related back to the filing of the original application.

In the present case, Briggs was a party to the joint application and to the preliminary statement filed here. His good faith cannot be successfully challenged because no possible advantage could have been derived by attributing to Jacobi a share in the invention. The testimony would have been exactly the same in either case. Indeed, it would have been to the advantage of Briggs had he claimed to be the sole inventor, for in that situation Jacobi could have been a corroborating witness. When, therefore, it became apparent to the Patent Office that Briggs and not Briggs and Jacobi was the real inventor of this issue, either the joint application should have been amended or Briggs accorded the privilege of filing a sole application, but he was denied either form of relief. This was error. The result, as we have seen, was an award of priority to one not the prior or real inventor, and the consequent defeat of the express provisions of the statute.

We come now to appeal No. 1552. The issue here is expressed in five counts, of which the first and fifth are illustrative, as follows:

"1. In an electric switch, a plurality of circuit contacts, a switch arm engageable with said contacts in succession, a supplementary switch, and mechanism constructed and arranged to lock said switch arm in any of its successive positions and to simultaneously actuate said supplementary switch."

"5. An electric switch comprising a plurality of contacts adapted to be connected to different circuits, a switch arm movable to any one of a plurality of positions to engage said contacts and control the circuits connected thereto, a second switch arm and contact adapted to be connected to a circuit, a key-operated rotatable locking device for the first switch arm, means for operating the second switch arm by rotation of the locking device to locking position, and means for sustaining a key in position for operating said rotatable locking device."

[4] The same application of Kaisling and the same exhibits of Briggs and Jacobi are relied upon. Here, as in appeal No. 1554, the Patent Office ruled that the invention was attributable to Briggs alone. What we have said in the prior appeal is equally applicable here, but a further ground of decision was that neither Exhibit No. 4 nor Exhibit No. 15 supports these counts, because under the view of the Patent Office there is no simultaneous operation of the two switches in either exhibit. The Board says:

"The counts call for the locking of the lighting switch arm and the actuation of the ignition (supplemental) switch simultaneously. There is no simultaneous operation of these two switches in either exhibit. In 'No. 15, starting with both switches unlocked and the ignition switch in its 'on' position, the latter switch may be operated by the key if the latter is only partially inserted, the key being turned to the left. When the switch reaches the 'off' position the key can be turned no farther until it is first pushed in to its full extent. Then it may be turned in either direction. Turning it to the right merely brings the ignition switch back to its former position, and the two movements effect no useful result. Neither of these

movements has caused the lighting switch to become locked. This can be effected only by turning the key to the left almost a complete rotation after the ignition switch has been actuated. The operation in which the ignition switch is actuated by the key and the lighting switch is locked consists in first inserting the key partially, then turning it to the left to actuate the ignition switch, then stopping the rotation of the key, then pushing the key inwardly to its full extent and then turning it almost a complete rotation to the left. At substantially the end of this operation the lighting switch is locked. There is in this switch no simultaneous op- eration of the ignition switch and the devices for locking the lighting switch, and for this further reason Briggs and Jacobi cannot rely upon either Exhibits Nos. 4 or 15 as evidence of conception or reduction to practice."

In the first place, the word "simultaneous" originated in another application. Naul, filed March 10, 1916, now patent No. 1,320,704. That application fails to place emphasis upon this term, or to point out any particular necessity for giving it a technical interpretation. In the Briggs structure, as clearly appears from the statement of the Examiners in Chief, the operation is so continuous as to be substantially simultaneous. To rule otherwise would be to place form before substance, or, by the arbitrary interpretation of a term evidently not intended to have special significance, to deprive the prior or real inventor of the benefit of a device reasonably capable of performing the identical function. See Westinghouse Machine Co. v. C. & G. Cooper Co., 245 Fed. 468, 157 C. C. A. 625.

The suggestion was made by Kaisling in the Patent Office, as here, that Briggs concealed and suppressed his invention. As to this contention little need be said, for the installation at Detroit of a device like Exhibit No. 15, under the conditions we have detailed, is a complete answer to Kaisling on this point.

It follows that the decision in No. 1553 is affirmed, and the decisions in Nos. 1552 and 1554 are reversed.

Affirmed as to No. 1553.

Reversed as to Nos. 1552 and 1554.