### ELLIS v. SHAW.

(Court of Appeals of District of Columbia. Submitted November 20, 1923. Decided February 5, 1924.)

#### No. 1615.

Patents ⊂⊃106(2)—Senior application held to disclose structure on which counts in interference could be read.

In an interference proceeding relating to an invention of a lath board composed of disintegrated fiber formed into a porous, expansible and compressible heat-insulating body, having on one of its surfaces depressions adapted to positively interlock with the plaster, *held*, that senior application, either directly, or so effectually and obviously as to require only mechanical skill in the construction of it, disclosed the structure on which the counts in interference could be read.

Appeal from the Commissioner of Patents.

Interference proceeding between George H. Ellis and John K. Shaw. From a decision awarding priority to the last-named party, the first-named party appeals. Affirmed.

Alva V. Cushman, of Washington, D. C., and John E. Stryker, of St. Paul, Minn., for appellant.

William W. Dodge and T. A. Witherspoon, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. Appeal in a patent interference case. The contest is between the parties Ellis and Shaw; the party Muench having abandoned the case. The invention relates to so-called heat-insulating boards or panels, sometimes called lath boards, composed of disintegrated vegetable fiber, designed to serve in the place of lath in a wall as a base or foundation for the plaster. It may be said in general terms that each of the competing inventions provides for boards of this material, having grooves, indentations, or depressions upon one side, which is to be the plaster-receiving side; it being intended that these depressions shall become filled with plaster when that material is spread upon the surface, thereby serving an interlocking purpose.

The two counts of the issue read as follows:

1. A lath board composed of disintegrated fiber formed into a porous, expansible and compressible heat-insulating body, having on one of its surfaces depressions adapted to positively interlock with the plaster.

2. A lath board composed of disintegrated vegetable fiber pulp and formed with depressions to positively interlock with plaster applied thereto; the fiber pulp being adapted to stretch and compress under a force less than that which will crack said plaster.

Shaw filed his application on May 23, 1918, and claims conception on October 23, 1917; first sketches, drawings, and written descriptions on May 25, 1918; disclosure November 15, 1917; and actual reduction to practice November 22, 1918. He claims also to have made specimens on January 3, 1918, with depressions which were too small to be efficient, but which by mechanical improvement could be made so.

Ellis filed his application on December 5, 1918, and claims conception with sketches in February, 1918; first specimen made first week in April, 1918; prospectus, with construction drawings, before August 1, 1918; disclosure in April, 1918. Ellis was improvidently granted a patent on September 30, 1919, while Shaw's application was concurrently pending, but nevertheless Ellis remains the junior party in this proceeding.

A motion was made by Ellis to dissolve the interference on the ground that Shaw had not disclosed in his application as filed and conducted prior to the date of the Ellis patent, any structure upon which either of the claims could be read, or in other words that Shaw's invention was not the same as that which was pointed out in the claims of the Ellis patent. The issue raised by this motion seems to express the most vital part of Ellis's contention. The motion was heard and overruled by the law examiner. We think that this ruling was correct, and that Shaw's application, either directly, or so effectually and obviously as to require only mechanical skill in the construction of it, did disclose a structure upon which the counts in interference could be read.

The material employed by Shaw was composed of woody fibers of various sizes, compressed and felted into a light corklike body commercially known as insulite, which is coarse, elastic, porous, expansible and compressible, and also heat-insulating, in the sense in which that term is here used. On one side of Shaw's boards there are indentations, which are either undercut or slanted, into which, as also to some extent into the interstices between the coarse fibers themselves, the plaster sinks with the double effect of binding the layers or laminæ of the insulite together, and of interlocking the plaster sheet with the body of the insulite. Furthermore the boards as described in the application are in fact capable of expanding and contracting under a force less than that necessary to crack plaster. It is true that Shaw did not state the latter function in his specifications or claims; nevertheless it was inherent in the disclosure of his application, and he is entitled to make the claim accordingly.

After the motion to dissolve was overruled by the law examiner, the question of priority was tried before the Examiner of Interferences upon the evidence. Ellis, being the junior party in the proceeding, undertook to discharge the burden of proof which rested upon him. For

that purpose he introduced voluminous testimony and submitted comprehensive briefs. Nevertheless the Examiner of Interferences and the Examiners in Chief, in careful and extended reviews of the case upon the evidence and the law, held against him and awarded priority to Shaw, and their decisions were approved and affirmed by the Assistant Commissioner. We do not think it necessary now that we should discuss the testimony in detail, and we content ourselves with saying that a review of the record satisfies us that the decisions below, in respect both to the facts and the law, were correct.

We therefore affirm the decision of the Assistant Commissioner.