24 C.C.P.A.(Patents)

## COAST v. DUBBS.*

### Patent Appeal No. 3684.

Court of Customs and Patent Appeals.

March 22, 1937.

Pennie, Davis, Marvin & Edmonds; of New York City (Edmund G. Borden, Frank E. Barrows, and Louis D. Forward, all of New York City, Clarence M. Fisher, of Washington, D. C., and R. F. Adams, of New York City, of counsel), for appellant.

Charles M. Thomas, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There is here brought to us for review a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to Dubbs upon the three counts of an interference declared, at his solicitation, between his application and a patent to Coast.

The counts are for a process of treating hydrocarbon oil of a heavy character for the production of gasoline. therefrom. Count 2 is typical and the same is quoted, the particular feature at issue being italicized:

"2. The herein described method of treating hydrocarbon oil which consists in subjecting a body of oil to heat and pressure to release vapors from the oil, drawing off

*Appellant's petition for rehearing denied May 8, 1937.

the heavier oil from the first body of oil and holding it under pressure, *reducing the pressure on said heavier oil to effect the distillation of a portion of said oil, then cooling the distilled portion of the oil to liquefy the same,* and then returning the resultant liquid to the main body of oil for retreatment."

Dubbs is the senior party. His application, Serial No. 240,913, was filed June 20, 1918, and he relies upon this date for conception and reduction to practice. The application of Coast was filed July 14, 1919, and matured into patent No. 1,585,233, issued May 18, 1926. Dubbs copied the claims which became the counts on May 25, 1926, and in due time the interference was declared.

In the brief on behalf of Coast is the following statement:

"No testimony has been taken by Dubbs on the question of priority. * * *

"Coast took testimony on the question of priority; but Coast does not rely, on this appeal, on any earlier date of invention than his filing date. Accordingly, the only question presented on this appeal is whether the Dubbs application as filed constitutes sufficient evidence of conception, disclosure, and constructive reduction to practice of the issue by Dubbs to establish the fact of invention by Dubbs."

The proceedings in the controversy following the declaration of interference have been as follows: Coast at a proper time moved to dissolve upon the ground, broadly, that the Dubbs application did not disclose the invention; the allegation particularly emphasized being that Dubbs "does not disclose the drawing off of heavy oil from a pressure cracking system and holding it under pressure and reducing the pressure to effect distillation." Also, it was alleged, with reasons offered in support of the allegation, that the disclosure of the Dubbs application is inoperative, particularly "in respects which preclude the carrying out of the process of the interference issue in accordance with the construction and operation described and illustrated in the Dubbs application." The motion to dissolve was overruled by the Law Examiner in a decision wherein the matters of disclosure, inherency, and inoperativeness were quite fully discussed. Coast filed a petition for rehearing which was denied; the denial being accompanied by written decision. He then proceeded to take testimony and an elaborate record was made up. Upon that

record the Examiner of Interferences rendered a decision in which the testimony was reviewed in extenso, and all the material issues, embracing the matter of inherency and disclosure, and a number of highly technical questions relating to operativeness were discussed and decided. A petition for rehearing seems then to have been filed and denied by the Examiner of Interferences. The Board of Appeals concurred with the Examiner of Interferences on all the issues, both of law and fact, and affirmed the decision awarding priority to Dubbs. The instant appeal to this court was then taken.

Much of the evidence presented on behalf of Coast related to the question of priority, he having attempted to establish conception and reduction to practice prior to Dubbs' filing date. Under the statement quoted, supra, from the brief of appellant, this issue is not before us and need receive no further notice.

The remainder of the material evidence introduced on behalf of appellant relates to the question of inherency, as hereinafter explained, and, in connection therewith, the alleged inoperativeness of the Dubbs device in particulars later to be described.

Dubbs introduced evidence devoted principally to the question of operativeness.

The several issues, as the case is presented to us, relate to the question of the *inherency* in the Dubbs device of that feature of the counts expressed in count 2, supra, by the clause reading, "reducing the pressure on said heavier oil to effect the distillation of a portion of said oil." Within this general question of inherency as the case unfolds itself is involved the subsidiary question of inoperativeness. Disclosure as to all other features of the counts is practically conceded by Coast. It is not conceded on the part of Dubbs that the above feature was not described in his specification as filed, it being pointed out that the specification makes reference to a "fractionating still 33 * * * which operates at atmospheric pressure." The insistence on the part of Dubbs is that in any event the step is inherent in the operation of his device, in consequence of which inherency his disclosure, including the expression as to atmospheric pressure, is sufficient to support his right to make the count. This insistence was sustained successively by the Law Examiner, the Examiner of Interferences, and the Board of Appeals; the last two of those tribunals

(the only ones having occasion to pass upon this particular question) holding that the burden of proof rested upon Coast as the junior party to establish the inoperativeness and lack of inherence which was alleged as to the Dubbs disclosure.

In its decision the board said: "In the Dubbs process, if the step of 'reducing the pressure on said heavier oil to effect the distillation of a portion of said oil' is inherent in his process as described, he has a disclosure which supports his right to make this feature of the counts even though there is no description thereof. * * *"

The authorities cited by the board in this connection are: Briggs et al. v. Kaisling, 53 App.D.C. 49, 288 F. 254, 1923 C.D. 186; Ellis v. Shaw, 54 App.D.C. 185, 295 F. 1006, 1924 C.D. 230; and Lovejoy v. Shultz, 58 App.D.C. 190, 26 F.(2d) 562, 1928 C.D. 180.

■ Upon this point Coast contends, first, that it was an error of law to hold that the burden of proof rested upon him; and, second, that, assuming such burden did rest upon him, he met the same by a preponderance of the evidence. His own statement of these issues, and summaries of his contentions thereon, appear in his brief as follows (the italics being quoted):

"1. Where the question presented is the right of the party Dubbs to make the claims copied from the patent of the party Coast for purposes of interference, *and where an essential feature of the counts is not described in the Dubbs application as filed* and it is *not possible to ascertain with certainty from the face of the Dubbs application* whether the undescribed feature is inherent in the normal operation of that which is described, is the burden of proof on Dubbs to prove that the undescribed feature is inherent in the disclosure of his application, or is the burden of proof on Coast to prove that this undescribed feature is not inherent?

"This issue raises a fundamental question of law, *having to do with the burden of proof.*

"Appellant contends that the burden of proof is on Dubbs to establish the fact that he made the invention and disclosed it in his application; and not on Coast to prove that he did not; that the decisions of the Examiner of Interferences and of the Board of Appeals involve a fundamental error of law on this question of burden of proof; and that, on the filings of fact which these decisions contain, priority of invention should have been awarded to Coast.

"2. Does the evidence show that the subject matter in controversy *is* necessarily inherent in the disclosure of the Dubbs application, or does it show that the subject matter in controversy *is not* necessarily inherent in such disclosure, such that the party having the burden of proof has maintained that burden by a preponderance of the evidence?

"Appellant contends that a preponderance of the evidence clearly shows that the subject matter in issue *is not* necessarily inherent in the Dubbs disclosure; and that Dubbs accordingly has no right to make the claims, and that priority of invention should be awarded to Coast."

It may be said that throughout the voluminous record and in the briefs of the respective parties, the feature at issue is usually referred to as "flashing," a term which seems to be well understood in the oil cracking and distilling art as meaning the effecting of distillation by reduction of pressure upon the oil (or a part thereof) being treated at a certain stage of its passage through the cracking and distilling systems. The term "flashing," however, is not used in the specification or in the claims of either the Coast patent or the Dubbs application.

It may be said further at this point that both the Examiner of Interferences and the board make reference to prior proceedings in the Patent Office relating to the Dubbs disclosure. One such proceeding was ex parte on the part of Dubbs and one an interference proceeding between Dubbs and one Clark, to which Coast was not a party. In those proceedings it was held, in effect, that the flashing feature was inherent in the Dubbs disclosure. While, as of course, there was no holding by the tribunals of the Patent Office that these prior adjudications were binding as res adjudicata in this proceeding, it was held, being especially emphasized by the Examiner of Interferences, that those prior decisions are entitled to "considerable weight," and, in his words, "must be considered as controlling in the absence of evidence showing a contrary state of facts." The Examiner of Interferences referred to In re Manson, 45 App.D.C. 563, 1917 C.D. 152, and John P. Minton et al. v. Adolph A. Thomas, 48 F.(2d) 425, 18 C.C.P.A. (Patents) 1153, 1931 C.D. 374, saying that those cases "are not believed authority for

rendering a decision to the contrary without the support of testimony."

Obviously, the first question which we should determine, in view of the record in the case, is the legal question as to the burden of proof relative to inherency, and inoperativeness as it bears upon inherency, raised by appellant's assignment that it was error to hold that the burden rested upon him to show lack of inherency. Among the authorities cited as supporting appellant's contention upon this point are Cooper v. Downing, 45 App.D.C. 345, Lindley v. Shepherd, 58 App.D.C. 31, 24 F.(2d) 606, and Steenstrup v. Morton, 58 App.D.C. 343, 30 F.(2d) 867. These authorities we have carefully examined, and, in our opinion, they fail to sustain appellant's position.

In the Cooper v. Downing Case, supra, the claims were for a structure and, so far as we can discern, no question of "inherency" such as is presented in the instant case was there involved. In that case the counts related to a car end made up in a particular manner. The Law Examiner sustained a motion to dissolve on the ground that Downing, who appears to have been the senior party, "in the light of his application and disclosure, was not entitled to make the claims." The board reversed the decision, saying: "While we do not gather from the original papers that the construction was intended to be such as is required by the issue, it is readily conceivable that those skilled in the art, guided by their special knowledge regarding the pressing of iron plates, would know that Downing's car would naturally be built in such a way that it would necessarily satisfy the issue."

The case was appealed to the commissioner, as at that time was the common practice, and he sustained the board. He refused to hear evidence as to what was intended by Downing's original application and disclosure, holding that it was the duty of the experts of the Patent Office to determine for themselves what an application discloses. This the court approved, but it reversed the commissioner's decision upon the merits, saying: "We are not convinced that Downing's application so clearly explains the principle here involved that any person skilled in the art would be led by his disclosure to construct a car end according to the claims of the issue."

So, the court disagreed with the board and the commissioner upon the question of fact, not as to inherency, which was not in terms involved, but as to the probable deductions or actions of those skilled in the art.

The court further held that in reaching the conclusion as to what one skilled in the art would do, it was confined to Downing's application as originally filed, and that the burden was upon Downing to establish his right "to extract from Cooper's patent the important feature of the issue."

In the case of Lindley v. Shepherd, supra, structure was also involved, and here again there does not seem to have been any question of inherency, such as we have before us now. The decision of the commissioner, which the court affirmed, pointed out Lindley's failure to disclose a particular feature of structure, and so denied his right to make the count.

In the case of Steenstrup v. Morton, supra, the counts likewise involved structure, and the losing party was found not to have disclosed features of structure which read upon the count. In that case the court held, as expressed in a syllabus of the opinion: "Where an applicant attempts to copy claims from an existing patent, it is incumbent on him to show clearly, in his specifications and structure, the means for accomplishing the object called for in claims."

Appellant also cites and quotes from certain of our decisions. In re Dubbs, 77 F.(2d) 520, 22 C.C.P.A.(Patents) 1281; In re Ball, 81 F.(2d) 242, 23 C.C.P.A.(Patents) 830, 28 U.S.Pat.Q. 279. The question of inherency was, to a certain extent, involved in both of those cases; but in each there was, in effect, a finding below of the lack of inherency, although that finding is not emphasized in our decisions. In the first case a critical feature (that of "partially condensing the vapor under rectifying conditions at a pressure in excess of 25 atmospheres") was held not to be disclosed, and, while it was said there that the process of certain of appellant's claims obviously *might* be carried out by appellant's disclosed apparatus, it must be evidence that we, like the tribunals of the Patent Office, were not impressed with the argument as to the step alluded to being an inherent one necessarily resulting from the operation of the apparatus. In the second case we distinctly pointed out that a structure might be produced strictly in accordance with the disclosure of appellant in that case which

738

would not function in accordance with the counts there at issue, and expressly held lack of inherency.

As we understand appellant's theory, it is that in this case the disputed feature, or step, of the process is not *necessarily* inherent in the Dubbs apparatus as disclosed, and inherency not being necessarily present and the step not being affirmatively disclosed, the burden of showing it to be inherent rests upon Dubbs.

The difficulty with this position is that appellant was confronted with a finding by the Law Examiner that the step is inherent, and this view was affirmed by the successive tribunals of the Patent Office. We are unable to see how, if the step be truly *inherent,* it is not *necessarily* inherent. In the decisions of this court cited, supra, the cases came to us with findings by the Examiner of Interferences and the board against inherency. There were in those cases nothing more than the possibility of constructing apparatuses in accordance with the respective devices which *might* function in accordance with the counts, but which also might not so function. Here we have the concurrent findings of three tribunals, to say nothing of the findings in the earlier proceedings alluded to, to which appellant was not a party, that prima facie the step is inherent in the operation of the apparatus, the physical features of which are fully disclosed.

The description of the Dubbs device, in connection with the discussion of count 2, supra, by the Law Examiner is as follows: "The main body of oil is subjected to heat and pressure in pipes 2, 3, 4 and 5 and vapors are released in chambers 7, 8, 9 and 10. Vapors are drawn off from chambers 7, 8, 9 and 10 by pipes 15, and the heavier oil is drawn off from the first body of oil and held under pressure in tank 38. Beyond valve 37 pressure is reduced in pipe 32 to effect distillation at atmospheric pressure in still 33 and the distilled portion is cooled in condenser 35, the resultant liquid being returned to the main body of oil through tank 36 and the pipe connected therewith to pump 6."

With the petition for rehearing, Coast presented an elaborate discussion of the Dubbs device and urged numerous technical matters as showing lack of disclosure. The Law Examiner, however, adhered to his first conclusion, saying after quoting from the above finding: "From this statement it is clear that the law examiner was of the

opinion that the party Dubbs did disclose the essential step of reducing the pressure on the second body of oil to effect the distillation of a portion of said oil."

The foregoing description and the Law Examiner's deduction therefrom was approved, in substance, in the subsequent decisions by the Examiner of Interferences and the Board of Appeals.

Under all the facts of this case, we think a prima facie showing of inherency was made in the application of Dubbs, and that it was, therefore, incumbent upon Coast as the junior party to show lack of inherency, and if he failed so to do we think the decisions below are correct and supported by the authorities cited by the board and by us recited, supra. It may be pointed out that those decisions were by the same court (the Court of Appeals of the District of Columbia) which decided three of the cases cited by appellant upon the point of inherency.

As a matter of fact, Coast, doubtless for precautionary reasons, notwithstanding his view as to the rule of law respecting the burden of proof in cases such as this, did undertake to show that the disputed step is not inherent in the Dubbs disclosure. To this end he (or his assignee), in 1928, caused a plant to be erected at Petty Island, N. J., which it is claimed, the claim being vigorously disputed by Dubbs, was in conformity with the Dubbs disclosure. At this plant both ex parte and inter partes, tests were made, and the record contains evidence relating to those tests which covers something like 2,000 printed pages, a large number of documentary exhibits being introduced in addition to the testimony of many witnesses. It is claimed that the evidence so presented proves the inoperativeness of appellant's apparatus, as disclosed in his application, in the matter of flashing—that is, in respect to the step at issue.

No good purpose could be served by a written review of that testimony here. Already it has been indicated that the Examiner of Interferences made an extensive and exhaustive analysis of it. The board in its decision also touched upon the material points in considerable detail. A number of issues involved in the testimony are extremely technical in character and would require many pages of explanation which, since we agree with their findings, would amount to nothing more than a repetition of what was said by the examiner

and the board. It was the conclusion of the examiner, after his analysis of the evidence, that: "It is therefore considered that in designing the Petty Island plant undisclosed details tending to defeat the purposes or objects of the Dubbs invention which are definitely disclosed in his application were adopted, when obvious engineering skill would dictate other design, and that Coast has failed to sustain the burden of proof imposed upon him."

Of this the board, after its analysis, said: "The above holding of the Examiner of Interferences is well taken in our opinion. In his endeavor to show the disclosures of the Dubbs application inoperative to produce the results called for in the counts, Coast adopted features unwarranted by the Dubbs application or by obvious engineering skill in the construction and operation of the Petty Island still, as noted above. We also find with the Examiner of Interferences that Coast has not sustained the burden of proof imposed upon him as junior party."

■■ A very large part of Coast's necessarily extensive brief is devoted to efforts to show error as to the findings of fact below on the question of inoperativeness, and citations to the testimonial record in support of his contentions are numerous. These references have been quite helpful in the consideration of this somewhat complicated and vigorously contested case. After quite painstaking study of the record, however, we do not feel that the court would be justified in reversing the finding of ultimate fact made below. The finding itself and the findings subsidiary thereto are substantially concurred in by both the trial and appellate tribunals below. It is a rule of long standing in this jurisdiction that the courts will not reverse findings of fact unless such findings be contrary to the weight of the evidence. Of course, where, as here, there are concurring findings of the trial and appellate tribunals of the Patent Office upon even minute details and upon questions highly technical, the presumption of correctness obtains unless it appears that they are manifestly wrong.

It remains to be said that Dubbs (or his assignee) also erected a plant, claimed to be in conformity with his disclosure and that both ex parte and inter partes tests were there made, and a somewhat voluminous record including testimony and documentary exhibits was made up on his behalf in the effort to show operativeness. The Examiner of Interferences held as to this, in effect, that the design of the Dubbs plant also departed from the Dubbs application disclosure. As a result he concluded that "the evidence submitted by both parties fails to prove either the inoperativeness or operativeness of the Dubbs disclosure to produce the results required by the counts," and his ultimate conclusion that Dubbs was entitled to the award of priority rested, in effect, solely upon the finding of inherency from the disclosures of the Dubbs application itself.

The board did not pass upon the question raised by the evidence on behalf of Dubbs, holding it to be unnecessary to a decision upon the question of priority. We may remark that had we disagreed with the board as to the conclusion to be drawn from the evidence on behalf of Coast, it would seem to have been necessary to remand the case for a consideration of the Dubbs evidence, but since we do agree such action is unnecessary.

■ Prior to the oral argument of this case appellant entered a motion to strike certain portions of the brief of appellee. The motion was resisted by appellee and the court took it under advisement to be later determined. While there may be some doubt whether the record justified the matter complained of, it was found to be wholly immaterial to our decision and was ignored by us. In view of such immateriality the motion is denied.

■ Certiorari issued at the instance of appellee to bring before the court certain matters alleged to have been a part of the record of the case before the tribunals of the Patent Office. The allegation proves to have been correct and, since the matter should have been included in the record in the first instance, the costs incident to the action will be taxed against appellant.

We find no error either of law or of fact in the decision of the board, and the same is affirmed.

**Affirmed.**