**FORWARD PROCESS CO. v. COE, Com'r of Patents.**

Nos. 7358, 7359.

United States Court of Appeals for the District of Columbia.

Argued on Rehearing Nov. 12, 1940.

Decided Dec. 9, 1940.

Rehearing in 7359 Denied Jan. 7, 1941.

Clarence M. Fisher, of Washington, D. C., and Raymond F. Adams, of New York City, for appellant.

William Wallace Cochran, U. S. Patent Office, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

These are appeals from decrees of the District Court dismissing bills to obtain patents.[1] The claims relate to the cracking of oil, to produce gasoline, by passing preheated oil through a series of pipes or "steam heat exchangers." As the District Court states, "The oil enters the first of the steam heat exchangers at a temperature of from 400° F. to 450° F., leaving the fourth heat exchanger at a temperature of 850° F., and leaves the tenth heat exchanger at a temperature of from 975° F. to 980° F., the cracking of the oil taking place in heat exchangers 5 to 10, inclusive." Exchangers 1 to 4 comprise the first heating zone, and exchangers 5 to 10 the second.

In Claim 18, it is stated that the oil is "raised rapidly" in temperature in the first heating zone and then "heated mildly" in the second. The terms "rapidly" and "mildly" refer to the relative rates of temperature increase, per unit of time, in the two zones. The specification, unlike Claim 18, does not say that the oil is raised rapidly in the first zone and heated mildly in the second. The District Court found, further, that this is not inherent in the specification, and therefore sustained the Patent Office in rejecting Claim 18. The specification shows that the total rise in temperature in the second zone is much less than that in the first. But whether the rise is slower in the second zone depends not only on the total rise but also on the lapse of time, as to which the specification is silent. Oil enters the first zone in liquid form and the second zone in vapor form, and the Patent Office points out that "the great expansion of the oil incident to its vaporization necessarily results in a greatly increased speed of its travel" through the second zone. For this reason, the Office contends, no inference can

---

[1] R.S. § 4915, 35 U.S.C.A. § 63.

be drawn from the specification as to the relative rates of rise in the two zones.

The specification discloses a pressure of "approximately 200 lbs. to 500 lbs. or higher according to the oil being run." It does not disclose the feed rate, although the evidence shows that that is important. Appellant's witness Kaplan found by experiment that, at certain feed rates, the rise in temperature per unit of time was *greater* in the second zone than in the first when a pressure of only 200 lbs. was maintained, but was somewhat less in the second zone than in the first when pressures of 250 lbs. or of 300 lbs. were maintained. At 250 lbs. pressure, the rate of rise in the second zone was 91 per cent of that in the first zone when a feed rate of 120 was used, 89 per cent when a feed rate of 140 was used, and 71 per cent when a feed rate of 163 was used. The record discloses no ratio more favorable to appellant's contention than 71 to 100. We cannot say that such a ratio must be regarded as supporting the claim of heating "rapidly" in the first zone and "mildly" in the second. On the contrary, the terms "rapidly" and "mildly," in their context, seem to us to imply some such ratio as two, or more, to one. Specifically, using Kaplan's figures, we cannot say that if a rise of 47.2° F. per minute is considered "rapid" a rise of 33.7° F. per minute must be considered "mild." Moreover, Kaplan's experiments show that there is less difference between the rates of rise in the two zones when a pressure of 300 lbs. is used than when a pressure of 250 lbs. is used. No experiment with pressures between 200 and 250 lbs., or above 300 lbs. is reported. For all that we can see it is quite possible that, at some pressures within each of those ranges, the rise in temperature in the second zone might be as fast as, or faster than, that in the first zone. Appellant contends that "a person following the process described in the Forward patent will *usually* obtain the conditions called for by the claim." We think it is not clear that such a person will *ever* obtain those conditions. The case is therefore far from meeting the requirements of the doctrine of inherency.[2] "Inherency * * * may not be established by probabilities or possibilities.

The mere fact that a certain thing may result from a given set of circumstances is not sufficient." [3]

The other claims in suit, like the specification, do not refer in terms to heating "rapidly" or "mildly." They describe the process in terms of temperature, pressure, carbon formation, the avoidance of substantial cracking in the first zone, and the achievement of substantial cracking in the second zone. The Patent Office and the District Court have rejected these claims for lack of invention over certain prior patents and publications. The references relied upon by the District Court include the Rittman publication, Bureau of Mines, Bulletin 114 of 1916, pages 46–49, 59 and 66; de Florez, patent No. 1,715,643; and Wellman, patents Nos. 1,390,002 and 1,335,767. The Rittman publication suggests the temperature and pressure for securing a maximum yield of gasoline. De Florez discloses a process for cracking oil in the vapor phase by passing it through a heating coil. The oil is first vaporized in the cooler part of the coil and then cracked at a higher temperature. Carbon deposit is prevented by increasing the velocity of the flow. In Wellman patent 1,390,002, oil is cracked in the liquid phase in cracking coils after preheating in a tank. In Wellman patent 1,335,767, oil is cracked by preheating it to a point just below vaporization and drawing it into a superheater where it is subjected to cracking temperature and pressure. Forward claims a patentable advance over the prior art in that the oil is brought (rapidly, he contends) to a temperature of 850° F. without cracking, and then heated from 850° F. to 975° F., in a pipe-like heater, for a period of time long enough to effect substantial formation of gasoline. We think the conclusion of the Patent Office, that his departures from the prior art are not inventive, is consistent with the evidence. Whether we should have drawn that conclusion is not the question. Since it has substantial support in the record, we must affirm. Abbott v. Coe, 71 App.D.C. 195, 109 F. 2d 449, 68 Wash.Law Rep. 272.

Affirmed.

STEPHENS, Associate Justice, dissents.

[2] Cf. Eames v. Andrews, 122 U.S. 40, 7 S.Ct. 1073, 30 L.Ed. 1064; Rogers v. Aikman, 51 App.D.C. 218, 219, 277 F. 617; Ellis v. Shaw, 54 App.D.C. 185, 186, 295 F. 1006; Prescott v. Swain, 57 App.D.C. 306, 307, 22 F.2d 1004.

[3] Hansgirg v. Kemmer, 102 F.2d 212, 214, 26 C.C.P.A., Patents, 937.