McCREARY v. ZWORYKIN. *
Patent Appeal No. 2848.

Court of Customs and Patent Appeals.
Feb. 8, 1932.

Walter A. Scott, Chas. M. Candy, and Rodney G. Richardson, all of Chicago, Ill., for appellant.

O. H. Eschholz, of East Pittsburgh, Pa. (W. H. Whitten, Jr., of East Pittsburgh, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the examiner of interferences, awarding priority of invention to appellee. The invention involved is an improved method and apparatus for television. The issue is embraced in five counts, of which counts 2 and 3 are illustrative and read as follows:

"2. In a viewing device for television systems, a screen, means for producing an image on one face of the screen, means for causing a cathode ray to explore the oth-

*Rehearing denied March 7, 1932.

er face of the screen, and means between the faces for establishing conduction transverse to the screen at each point while the cathode ray acts at said point and preventing conduction at other times.

"3. Apparatus of the character described comprising a resistance element, whose resistance varies with its illumination, means for forming an image on the element, and means comprising a movable cathode ray for including in an electric circuit successive small areas of said element."

Some of said five counts had been issues in other interferences between appellant, appellee, and other applicants, but said interferences were later consolidated with this interference.

Appellant's application was filed on April 10, 1924, and that of appellee was filed on December 29, 1923. Appellee therefore is the senior party.

The principal questions before us relate to the transmitter cathode ray tube disclosed by Zworykin, the principal features of which may be summarized as follows:

In one end of the tube is a hot cathode and a tubular anode, between which there is placed a diaphragm; said diaphragm having a small hole therethrough for the purpose of forming the cathode ray into a thin beam. About midway of the tube there are two plates which are connected to a relatively high frequency generator, the effect of said plates being to create an electrostatic field, which field varies with the frequency supplied. At this point there are also two coils, connected to a generator of relatively low frequency; said coils being so positioned as to produce a varying electromagnetic field which is parallel to the electrostatic field produced by the plates above mentioned. Further along in the tube there is mounted a plate, referred to in the decisions of the Patent Office as the "composite" plate, which is mounted in such manner that the portion of the tube lying beyond said plate is sealed from that part of the tube containing the anode, diaphragm, cathode, and plates heretofore adverted to. This composite plate is made up of a thin sheet of aluminum foil, which is presented toward the cathode; on that side of said aluminum foil which is removed from the cathode there is a layer of aluminum oxide; on this, in turn, there is a film of photoelectric material, such as potassium hydroxide. The tube is filled with a low pressure gas, such as argon. The aluminum oxide of the composite plate is normally an insulating layer preventing conduc-

tion between the photoelectric material and the aluminum foil. The last element within the tube proper is a grid, said grid being interposed between the composite plate just discussed and a lens, which lens is mounted on the outside of this end of the tube. The lens is to enable the light projected from the image to be broadcast to be focused upon the photoelectric layer of the composite plate.

The operation of the tube, as disclosed in Zworykin's application, is as follows: The light from the image being transmitted is focused, by means of the lens, upon the photoelectric side of the composite plate. The photoelectric material gives off electronic emissions which are proportional to the degree of illumination reflected by the image; this electronic emission serves to bridge the gap between the photoelectric element of the composite plate and the grid interposed between said plate and the lens. The electrostatic and electromagnetic fields set up by the plates and coils respectively so co-operate that the cathode ray is brought to traverse, "point by point," the entire area of the aluminum foil side of the composite plate, completing such traverse, it is stated in Zworykin's specification, in $\frac{1}{32}$ of a second. When the cathode ray bears upon any point of said aluminum foil area, it penetrates it, and the effect is that through this point there is established conduction between said aluminum foil and the grid. These elements, the aluminum foil and the grid, are connected to a source of supply, and current flows from one to the other when such conduction has been established by the cathode ray. Such current is, in turn, modulated by the varying degrees of electronic emission at different points of the photoelectric material. Thus there is set up an electrical current which is modulated in accordance with the varying degrees of light intensity on the different points of the photoelectric material; such modulated current is reflected through a series of amplifying devices not necessary here to be considered, and finally the impulses broadcast from the antenna of the transmitting station reflect the modulations of the current flowing through the *aluminum foil to grid* circuit of the cathode ray transmitting tube.

Prior to the consolidations of interferences above noted, as to counts 1, 2, and 3, which were in separate interferences, appellant moved to dissolve upon the ground, among others, that the television system and transmitter described in appellee's application was inoperative; also upon the ground

that counts 1 and 3 were misdescriptive of appellee's disclosure. Each of these motions was denied by the law examiner. In his decision denying the motion to dissolve as to count 3 (Interference No. 55,448), there is found the following: " * * * It is not evident that any aluminum foil of the thickness originally given by Zworykin could satisfy these conditions but the device including plate 32 can not be held so inoperative as to require dissolution of the interference if it can be made operative by electrical skill without invention, and Zworykin should be allowed an opportunity to establish the operativeness of his device by testimony if necessary. * * * "

In the law examiner's decision denying the motion to dissolve as to count 2 there is found the following: "The motion to dissolve by McCreary is practically a repetition of a motion to dissolve as to Zworykin in interference No. 55,448, Farnsworth v. Reynolds, v. Case, v. Sabbah, v. McCreary, v. Zworykin. For reasons stated in the decision of the law examiner in that interference the motion by McCreary is denied."

In his decision denying the motion to dissolve as to count 1, the law examiner said: "The motion by McCreary is directed to practically the same points of insufficiency and inoperativeness of Zworykin's disclosure that are advanced in Interference No. 55,448 and a repetition of the discussion is not deemed necessary."

The record does not show any motion to dissolve the interference as to counts 4 and 5.

After filing his original application, and before the decisions of the law examiners upon the motions to dissolve hereinbefore referred to, certain amendments to appellee's disclosure were made, which amendments were objected to by appellant upon the ground that they constituted new matter. Both the law examiner and the Board of Appeals found against appellant's contention in this respect, but, as no error is assigned in the reasons of appeal to the allowance of these amendments, they need not be considered by us.

No testimony was taken by either party, and in consequence judgment was rendered by the examiner of interferences in favor of appellee, he being the senior party. Appellant appealed therefrom to the Board of Appeals, assigning as grounds of appeal, among others, the following:

"(5) The Law Examiner erred in not dissolving the interference on the ground that Zworykin's application does not contain a description of his system which is sufficient to enable a person skilled in the art to construct and use the same.

"(6) The Law Examiner erred in not dissolving the interference as to counts 1 and 3 on the ground that these counts are misdescriptive of Zworykin's disclosure."

The Board of Appeals in its decision stated:

"The claim of appellant that Zworykin should have taken testimony to establish operativeness is deemed wanting in merit. McCreary took no testimony and made no tests and has merely sought by argument, a process of reasoning, and academic discussion to demonstrate that Zworykin's apparatus will not work. Zworykin has submitted explanations which he regards as fully meeting or answering the objections of McCreary. Clearly enough Zworykin is not called upon to take testimony until McCreary has overcome the prima facie case of operativeness established by Zworykin in filing an application which the examiner deemed a sufficient disclosure of an operative mechanism. This same conclusion reached by us applies to the allegation of the appellant that Zworykin's original specification and drawings constituted an insufficient disclosure. The examiner regarded the additional explanation as within the original disclosure and after a careful consideration of the record we see no reason to reach any other conclusion. This Office has no means for testing out the Zworykin apparatus. There is a statement in Zworykin's record, undenied by the appellant, that the apparatus has been constructed by Zworykin and that it did operate. There is a presumption of operativeness which is based upon the fact that it is contrary to the rules of human conduct to go to the trouble and expense of devising or designing an apparatus of this character, preparing and filing an application for a patent upon it if the applicant is not fully satisfied it will work. The burden of proof in showing Zworykin's apparatus inoperative rests upon the appellant and if he had desired to sustain it, he should have taken testimony. We are satisfied the explanations of the senior party of the objections urged by the appellant show that the apparatus, if properly constructed, is operative.

"The decision of the examiner of interferences awarding priority to the party Zworykin is affirmed."

Upon a request by appellant for reconsideration, the Board of Appeals further

found that counts 1 and 3 are supported by appellee's disclosure and reaffirmed its decision affirming the decision of the examiner of interferences. Appellant thereupon took this appeal.

Before us, in his brief and upon oral argument, appellant's counsel contends that the law examiner denied appellant's motions to dissolve the interferences on condition that appellee produce satisfactory proof that his device "can be made operative by electrical skill without invention," and that, until appellee established the operativeness of the device, he could have no right to contest the issue of priority of invention. Appellant further contends that, the law examiner having, as he claims, found that upon the record as it stood appellee's device was inoperative, and appellee having produced no testimony establishing operativeness of the device, he (appellant) was entitled to an award of priority of invention.

We have grave doubt that any of the reasons of appeal given by appellant are sufficiently specific to entitle him to a consideration by us of his contention that the denial of the motions to dissolve by the law examiner was conditional; however, appellee has not raised this question, and, assuming that this contention of appellant has sufficient foundation in the reasons of appeal, we will consider it upon its merits.

We cannot agree with appellant's counsel that the law examiner's denial of said motions to dissolve was conditional upon appellee's establishing the operativeness of his device, nor can we agree with appellant's contention that the law examiner found that appellee's device, as disclosed in his application, was inoperative. The statement of the law examiner, which appellant contends is a finding of inoperativeness of appellee's device, has already been quoted and is repeated here for convenience: " * * * It is not evident that any aluminum foil of the thickness originally given by Zworykin could satisfy these conditions but the device including plate 32 can not be held so inoperative as to require dissolution of the interference if it can be made operative by electrical skill without invention, and Zworykin should be allowed an opportunity to establish the operativeness of his device by testimony *if necessary.*" (Italics ours.)

We do not think the foregoing is a finding of inoperativeness. While it is apparent that the law examiner had doubts as to the operativeness of appellee's device, he was not satisfied that it was *inoperative.* The presumption was that it was operative. The primary examiner had allowed the claim to appellee and, but for the interference, a patent would have issued thereon, carrying with it the presumption of validity. Therefore, before the law examiner would be warranted in granting the motion to dissolve, he should be satisfied that the device was inoperative. Evidently he was not so satisfied, for he denied the motion to dissolve.

This conclusion is supported by the latter part of the statement quoted: " * * * Zworykin should be allowed an opportunity to establish the operativeness of his device by testimony if necessary." We cannot conceive why the law examiner should use the words "if necessary" if his statement was meant to be a finding of inoperativeness. Clearly these words imply that it might not be necessary for appellee to take any testimony, and we think that the words were used to mean that if appellant, being the junior party, introduced testimony overcoming the presumption of operativeness of appellee's device, appellee should have the opportunity to produce testimony that the device could be made operative by electrical skill without invention.

In this view of the case there is no inconsistency between the quoted statement of the law examiner and his decision denying the motion to dissolve the interference. We think this construction of his decision is further fortified by the fact that, in denying similar motions in the two other interferences before consolidation, he merely adverted to the decision just discussed and denied the motions without any reference to the possible necessity of appellee's proceeding to establish operativeness. (See his disposition of these motions as hereinbefore quoted.)

We therefore find that there was no error upon the part of the Board of Appeals in holding that the burden of proof was upon appellant to establish, at least prima facie, the inoperativeness of appellee's device, and, unless the application of appellee itself discloses inoperativeness of the device, priority of invention was properly awarded to appellee so far as this question is concerned.

We have hereinbefore noted that the record does not disclose any motion to dissolve the interference as to counts 4 and 5. However, as the Patent Office tribunals and counsel upon both sides have proceeded upon the theory that such motion was made, we would observe that, assuming such motion were based upon the same ground of inoperability, our conclusion with respect thereto would

be the same as that reached by us as to counts 1, 2, and 3 upon this question.

In this connection we think it proper to observe that it is unfortunate that the law examiner, in denying the motion to dissolve, unnecessarily employed language so ambiguous as to require construction, entailing an unnecessary burden upon this court, the board, and counsel for the respective parties.

██ The next question to be determined is upon the merits of appellant's contention that appellee's device shown in his application is, in fact, inoperative.

In the foregoing quotation from the board's decision the statement is made that: "* * * * There is a statement in Zworykin's record, undenied by the appellant, that the apparatus has been constructed by Zworykin and that it did operate. * * *"

We find no such statement in the record except in the preliminary statement of appellee and in a letter of appellee's counsel to the commissioner. Neither of these statements, so appearing, is any proof of the fact. Patent Office Rule 117. However, we think it is apparent from the decision of the board that it did not rely upon said statements of operativeness, because the board concludes its decision with the following: "* * * We are satisfied the *explanations* of the senior party of the *objections* urged by the appellant show that the apparatus, if properly constructed, is operative." (Italics ours.)

The statement referred to by the board, that the device of appellee had been constructed and did operate, was not an *explanation* of the *objections* urged by appellant, and therefore it would appear that the decision of the board would have been the same if said statement had not been considered.

However this may be, the burden of proof was upon appellant to show the inoperativeness of appellee's device. As stated by the board, he took no testimony and made no tests, but has sought by argument and academic discussion to demonstrate the inoperativeness of appellee's device. The art involved is a highly technical one and it is not usual for the courts to disturb the conclusions of the Patent Office upon a question of operativeness without very cogent proof of error. Fowler v. Dodge, 14 App. D. C. 477.

If the device disclosed by appellee is in fact inoperative, appellant could have produced testimony of witnesses skilled in the electrical art to show that fact; whereupon, as stated by the law examiner, appellee would have had the opportunity, if a prima facie case of inoperativeness had been established, to produce like witnesses to show, if he could, that one skilled in the art, upon reading appellee's application, could readily make the device operative without the exercise of the inventive faculty.

Appellant's chief claim of inoperativeness lies in the assertion that the aluminum foil described in appellee's application must be of an impossible thinness to produce the results claimed in appellee's application. Appellee's answer to this contention is, quoting from his brief:

"To what degree the aluminum foil will be penetrated depends upon its thickness and upon the potential driving the electrons in the cathode ray. What potential can be used depends upon the gas pressure in the part of the tube where the cathode ray is produced. It is McCreary's position that the penetration of the foil by the electrons requires a thinner foil than those skilled in the art know how to produce, or a potential higher than could be employed in the presence of gas. * * *

"It is within the skill of a physicist to select the thickness of foil, the degree of gas pressure and the potential in such a way that the desired result will be accomplished.

"The discussion of these quantities is complicated by the fact that any one of them may have its value changed by a change in one or more of the others. McCreary has taken advantage of this by taking each quantity in turn, selecting for consideration with it unsuitable values of the correlated quantities and arguing that the quantity being discussed must have an impossible value. It is easy to make in this way an argument that sounds convincing but contains no real merit.

"Of course the aluminum foil must be thinner than can be produced *if* one selects potentials low enough to produce this requirement. Likewise potentials must be too low to penetrate the foil *if* the gas pressure is such that higher potentials are impossible, and so on through the list."

We are not satisfied that the foregoing observations are not correct, and, without going into the extremely technical arguments as to various points which appellant claims establish inoperativeness in this and other particulars, we content ourselves with saying that such arguments do not convince us of the inoperativeness of appellee's device,

and we do not think that we can take judicial notice of some of the alleged facts upon which appellant rests his argument, such as the impossibility of producing aluminum foil thin enough to make appellee's device operative, when considered in connection with the potential driving the electrons in the cathode ray. Upon the ground that appellant has not convinced us that appellee's device is inoperative, we concur in the finding of the board that it is operative.

Appellant further contends that counts 1 and 3 are not readable on the apparatus described in appellee's application. The particular elements of these counts which appellant contends are misdescriptive are, in count 1, "a member whose resistance varies with the illumination thereof," and, in count 3, "a resistance element, whose resistance varies with its illumination." With respect to this feature the Board of Appeals in its decision said:

"* * * The allegation of McCreary is that counts 1 and 3 specify a cathode ray device having a resistance element 'whose resistance varies with its illumination.' The contention is made that Zworykin does not disclose a resistance element functioning in this manner. The law examiner, as stated by McCreary, regarded the composite plate 32 as a resistance element and held that the current through this plate at different points varied with the illumination of the layer of potassium hydride. The party McCreary admits the possible correctness of this interpretation, but insists that the count calls for a resistance change rather than a current change and the explanation of the law examiner is, in consequence, not deemed satisfactory. Furthermore, McCreary deems this view of the law examiner somewhat inconsistent with the view expressed by that official regarding the structure in the French patent No. 559,613 discussed by the law examiner in interference No. 55,448. We deem the explanation given by Zworykin, on page 42 of his brief, as persuasive that these counts are supported by the latter's disclosure. The plate 32 is, as noted by Zworykin, a tangible element as is also the photo cell and the layer of potassium hydride. These elements, or they may be read as a single element, function as a member whose resistance varies with the illumination and this is all that is necessary to support these counts."

We are not satisfied that the board erred in its conclusion and in the reasoning forming the basis of the same, above quoted.

To summarize, we find no error in the holding by the board that appellee's device disclosed in his application is operative; that all of the counts are supported by his disclosure; that his said application complies with the requirements of section 4888, Rev. St. (35 USCA § 33); and that upon the record appellee is entitled to an award of priority of invention.

The decision of the Board of Appeals is affirmed.

Affirmed.