**Otto HENNING, Appellant,**

v.

**Scott F. HUNT, Appellee.**

**Patent Appeal No. 5884.**

United States Court of Customs and
Patent Appeals.

July 1, 1955.

George R. Ericson, St. Louis, Mo. (Bertram H. Mann, Jr., St. Louis, Mo., and Dos Hatfield, Washington, D. C., of counsel), for appellant.

N. D. Parker, Jr., Washington, D. C., and M. A. Hobbs, South Bend, Ind., for appellee.

Before O'CONNELL, Acting Chief Judge, JOHNSON, WORLEY, and COLE, Associate Judges [original argument before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges].

JOHNSON, Judge.

This is an appeal, under Rev.Stat. 4911, now 35 U.S.C. § 141, from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention as claimed in the single count in issue to appellee, Scott F. Hunt.

The invention here involved relates to carburetors for internal combustion engines, and more particularly to means for automatically controlling the position of the choke valve of the carburetor in response to variations in the temperature and suction developed by the engine during its operation. The count in issue is:

"In a carburetor, means forming a mixing conduit, a choke valve controlling the admission of air to said mixing conduit, said choke valve having a part which is movable toward open position by direct action of suction, *suction operated means for opening said choke valve a limited distance only,* said suction operated means being constructed and arranged to permit a continuance of the opening of said choke after the cessation of movement of said suction operated means, and a heat responsive element connected to said choke valve to control the same in conjunction with said suction operated device. (Italics added.)"

The present interference, No. 82,554, is between appellee Hunt's patent application, Serial No. 727,648, filed May 26, 1934, and the Henning Patent No. 2,306,251, issued December 22, 1942, upon an application, Serial No. 418,980, filed November 13, 1941. The Henning application is a division of, and thus entitled to the benefit of the filing date of, patent application Serial No. 575,577, filed November 17, 1931, now Patent No. 2,421,733. There is no contention made by Hunt that Henning is not entitled to the filing date of the earlier Henning application.

Hunt, however, has been successful in previous related litigation in obtaining the benefit of the filing date for the above-mentioned Hunt sole application of an earlier filed co-pending joint application of Scott F. Hunt and Elmer Olson, Serial No. 575,025, filed November 14, 1931. It will be noted that the Hunt-Olson joint application was filed three days before the earlier Henning application.

The fact situation in the present case is complex because of the great number of related interferences, and because of the related *ex parte* proceedings which occurred during the pendency of the involved applications. However, in order to present a clear summary of the factual situation, it is deemed necessary to give a chronological analysis of the events which occurred, in addition to the facts stated above.

It appears from the record that the present interference, No. 82,554, originated in a circuitous manner from a motion made by Hunt in an earlier interference, No. 74,876, which involved said parent Henning application, Serial No. 575,577, and another Hunt application. As a result of this motion, Interference No. 76,519 was declared involving the Hunt application, Serial No. 727,648, and the Henning application, Serial No. 575,577. In this interference, the party Hunt copied claims from the party Henning.

Interference No. 76,519 was dissolved by the Primary Examiner acting on motions of Henning on two general grounds. The first general ground was that the Hunt sole application was not supported by a valid oath, and since it could therefore not support a properly allowable claim, there was no basis for the interference. More specifically, the oath in the Hunt sole application, filed May 26, 1934, averred that the invention was not in public use or on sale prior to November 14, 1931, the date of filing the Hunt-Olson joint application, Serial No. 575,-025. It did not aver that there was no public use or sale of the invention for more than two years prior to the actual filing date of the Hunt sole application, Serial No. 727,648. The Primary Examiner determined that the subject matter of the Hunt sole application was not the same as the subject matter of the Hunt-Olson joint application, and therefore the use of the filing date of the latter, November 14, 1931, in the oath of the sole application, filed May 26, 1934, did not clearly show that the subject matter of the sole application was not in public use

or on sale for more than two years prior to the filing date of said sole Hunt application. Furthermore, the Primary Examiner, in this same respect, determined that Hunt did not conform to the requirements of In re Roberts, 49 App.D. C. 250, 263 F. 646, in order to obtain the benefit of the filing date of the Hunt-Olson joint application for the later filed Hunt sole application for the reason that although Olson submitted an oath stating that he was not the inventor of the subject matter of the claims in the Hunt sole application, he never made an oath that he did not invent the matter claimed in the Hunt-Olson joint application. It was further held by the examiner that the Hunt-Olson joint application would not support the critical portion [italicized portion] of the claim, and therefore could not be relied on for its filing date.

The second general ground upon which the motion to dissolve was granted by the Primary Examiner was that Hunt's assignee was *estopped* from prosecuting the count of Interference No. 76,519 because of the adverse termination of other prior interferences in which the assignee of Hunt was a party. The reason for this was, according to the Primary Examiner, that the Hunt application, Serial No. 747,648, could have been brought into said prior interferences by motions under Patent Office Rule 109 which was then in effect. However, it does not appear from the record that Henning's assignee was a party to the prior interferences.

Since the decisions on motion were appealable, after the dissolution of Interference No. 76,519 in the above described manner, the party Hunt appealed to the Board of Appeals of the Patent Office from the decision of the Primary Examiner granting the motions to dissolve. The Board of Appeals affirmed the Primary Examiner.

After the adverse decision on appeal from the dissolution of Interference No. 76,519, *ex parte* proceedings of the Hunt sole application were resumed in the Patent Office. Hunt's claim which pertains to the instant interference, No. 82,554, was eventually finally rejected by the Pri-

mary Examiner on March 27, 1942 in view of the dissolution of Interference No. 76,519 as to Hunt.

Hunt, on receipt of the above-mentioned final rejection, appealed *ex parte* to the Board of Appeals of the Patent Office. On December 11, 1942, the Board of Appeals rendered its decision in which it affirmed the final rejection of the Primary Examiner.

Hunt, on June 9, 1943, filed Civil Action No. 20,023 in the District Court of the District of Columbia under Rev.Stat. 4915 to enforce the issuance of a patent including the claims which were lost in Interference No. 76,519. This action was entitled Bendix Aviation Corporation v. Conway P. Coe, Commissioner of Patents. Henning was not a party to this civil action. On April 17, 1944, the District Court handed down its judgment and findings of fact and conclusions of law reversing the rejection of certain of Hunt's claims, and directed the Commissioner of Patents to issue a patent to Hunt upon his otherwise complying with the requirements of law. The findings of fact and conclusions of law of Civil Action 20,023 are in part as follow:

### Findings of Fact

\* \* \* \* \* \*

"17. Both the Hunt and Olson joint application and the Hunt application in suit show a construction wherein the suction actuated piston operates a toggle and positively opens the choke valve a limited distance only.

"18. Both the Hunt and Olson joint application and the Hunt application in suit show a construction wherein the suction actuated piston operates a toggle and partially opens the choke valve."

### Conclusions of Law

"1. Hunt's claims 22, 27, 28 and 29, here in issue, could not have been made issues in any of interferences Nos. 68702, 68187, 68188 or 71471.

"2. Estoppel arising out of omission to assert claims in an interfer-

ence proceeding under Rule 109 of the Patent Office is estoppel by judgment and not estoppel *en pais*.

"3. Neither Hunt nor plaintiff [Hunt's assignee] is estopped from asserting claims 22, 27, 28 or 29 here in suit.

"4. The subject-matter of claims 22, 27, 28 and 29 of Hunt, Serial No. 727,648 is completely disclosed in Hunt and Olson application Serial No. 575,025 and also in the Hunt application in suit.

"5. Hunt is entitled to the filing date of the Hunt and Olson application Serial No. 575,025, namely November 14, 1941, for a constructive reduction to practice of claims 22, 27, 28, and 29 of the Hunt application in suit.

"6. The Hunt application in suit is a continuation of the joint Hunt and Olson application.

"7. The oath in the Hunt application in suit is good and valid in law and properly refers to the joint Hunt and Olson application.

" \* \* \* \* \* \*

"9. Plaintiff is entitled to a patent containing claims 22, 27, 28 and 29 of the Hunt application in suit."

\* \* \* \*

It is to be noted that findings of fact 17 and 18 state that the Hunt-Olson joint application will support the critical portion of the count.

Pursuant to the foregoing judgment in Civil Action 20,023, and on return of the Hunt application to the Patent Office, Interference No. 82,261 was declared by the Patent Office on January 14, 1946 again involving the Hunt sole application, Serial No. 727,648, and the Henning application Serial No. 575,577. It was found, however, that Henning's assignee, Carter Carburetor Corporation, had obtained claims in issued patents identical to those won by Hunt on appeal. These claims appeared in issued patents Nos. 2,085,351 and 2,325,372 of Irven E. Coffey. Interference No. 82,261 was therefore promptly dissolved and the present inter-

ference, No. 82,554, was declared on Hunt's claim 22 and claim 7 of Henning Patent No. 2,306,251 which matured from application Serial No. 418,980, which as mentioned above was a division of said Henning parent application, Serial No. 575,577, filed November 17, 1931. Companion interferences 82,555 and 82,262 were also declared at this time between the Hunt application and Coffey patents 2,085,351 and 2,325,372, respectively.

In the declaration of Interference No. 82,554, the present interference (and also in the companion interferences), Hunt was not given the benefit of the filing date of the Hunt-Olson joint application, filed November 14, 1931, and was not made the senior party. Hunt filed a motion to shift in which he called attention to Civil Action 20,023. Hunt was eventually given the benefit of the filing date of the Hunt-Olson joint application after petitioning the Commissioner of Patents, and the parties were reversed. This reversal of the parties was based on the findings of Civil Action 20,023. Hunt thus became the senior party in Interference No. 82,554 (and in the companion interferences) since the Hunt-Olson joint application was filed on November 14, 1931 whereas the parent Henning application was filed on November 17, 1931.

After Hunt was made the senior party because of his having obtained the benefit of the earlier filing date, Henning petitioned the Commissioner to reverse the order of the parties and make him the senior party. It appears from the record that the main argument for Henning was to the effect that he was not a party to Civil Action 20,023, and therefore this civil action constituted no basis for the decision making Hunt the senior party. The petition was denied.

Upon the refusal of the Commissioner to make Henning the senior party, Civil Action No. 37,782 was filed on November 19, 1946 by Carter Carburetor Corporation, the assignee of Henning, in the District Court for the District of Columbia. This action was in the nature of a mandamus to compel the Commissioner to direct the Examiner having jurisdiction of Interferences No. 82,262, 82,554, and 82,-555 to disregard the decision of the Commissioner which made Hunt the senior party. A decision favorable to Carter Carburetor Corporation was obtained in the District Court. Carter Carburetor Corporation v. Ooms, Commissioner of Patents, 73 U.S.P.Q. 278. However, this decision was reversed on appeal. Kingsland v. Carter Carburetor Corporation, 83 U.S.App.D.C. 266, 168 F.2d 565, certiorari denied 335 U.S. 819, 69 S.Ct. 40, 93 L.Ed. 373. Thus the decision of the Court of Appeals stood as the final disposition of the matter of mandamus, and Hunt remained the senior party to the interference.

At this stage, therefore, Henning was the junior party to Interference No. 82,-554 (and Coffey was the junior party to the companion interferences), and Hunt was the senior party. Testimony was taken, briefs were filed, and both parties represented at the final hearing before the Board of Interference Examiners in the Patent Office.

On January 22, 1951 the Board of Interference Examiners rendered its decision. The board held that Hunt, the senior party, established a date of conception of the invention in issue at least as early as October 3, 1931, and that Henning, the junior party, presented no convincing evidence of conception prior to that date. The board accordingly held that since Hunt was the first to conceive the invention in issue, and since Henning offered no satisfactory proof of an actual reduction to practice prior to his filing date, that Hunt was also the first to reduce the invention to practice, and was therefore entitled to the award of priority.

Henning has appealed to this court from the decision of the Board of Interference Examiners, and has assigned fifty-three reasons for appeal. However, in his brief, Henning has made the following statement:

"\* \* \* the final decision in this interference, depend upon the answers to five basic issues \* \* \*. These are:

"1. Did the Patent Office tribunals err in the weight accorded to and their interpretation of the findings and conclusions in ex parte Civil Action No. 20,023?

"(a) Did the Patent Office make an error of law in relieving the party Hunt of the necessity of proving, inter partes, the alleged inherency in his disclosure of a critical element of the count?

"2. Do the Hunt and Hunt-Olson applications, in fact, support the count?

"3. Is Hunt entitled to the benefit of the filing date of the Hunt-Olson application under the doctrine of In re Roberts?

"4. Is Hunt's assignee barred from further prosecuting and patenting the count because of interference estoppel?

"5. Has Hunt proven priority over Henning?"

We are of the opinion that the answers to the foregoing questions are determinative of the issues, and this case will therefore be treated accordingly.

### The Subject Matter

The count in issue has been set forth above. The italicized portion of the count is the critical portion; that is, the part which is in controversy.

Both inventions relate to automatic chokes. It appears from the background material set forth in the specifications that an internal combustion engine must be "choked" when it is started. That is, when the engine is initially started, the choke valve of the carburetor must be closed. This causes a minimum of air and a maximum amount of fuel to pass through the carburetor. Prior to the advent of automatic chokes, the choke valve was closed manually on starting, and as the engine heated up the choke valve was opened manually.

The present inventions relate to constructions for automatic chokes wherein the choking function is performed automatically. There seems to be no contro-versy relative to the non-italicized portions of the above-cited claim. It is therefore believed that the foregoing general explanation when read in the light of the claim adequately sets forth the general subject matter involved. The ensuing discussion will therefore be confined to an analysis of the respective structures which are pertinent to the critical [italicized] part of the count.

In the Hunt disclosure, a casing is mounted adjacent the carburetor on the inlet manifold of the engine. A cylinder, having a piston mounted therein is mounted in said casing. One end of said cylinder communicates with said inlet manifold. The piston is spring biased so that its position when the engine is stopped is at the end of the cylinder which is remote from the end which communicates with the inlet manifold. A pivoted lever is mounted on the casing. One end of this lever is coupled to the piston by a link. A toggle lever is also mounted in said casing in proximity to the uncoupled end of said pivoted lever. The toggle lever is connected through an intermediate linkage to the choke valve of the carburetor. When the engine is cold and not running, the choke valve is closed, and the toggle lever is in a straight line position which resists opening of the choke valve. When the engine fires on starting, suction in the inlet manifold will cause the piston to move in the cylinder against the bias of the spring. This will in turn cause the pivoted lever to pivot. As a result, the end of the pivoted lever which is proximate to the toggle lever, will break the latter. Because the toggle lever is broken, the linkage between the toggle lever and the choke valve will cause the latter to open against the bias of a thermostatic spring which is mounted in operative relationship to the choke valve. It has been successfully contended by Hunt that the above-described structure meets the above-italicized portion of the count. For the sake of completeness of description, it is to be noted that as the engine heats up, the thermostatic spring will yield and allow the choke to assume **a**

fully opened position when the engine has reached normal operating temperature.

The Henning structure, insofar as pertinent here, is as follows: A carburetor is mounted on the inlet manifold of the engine. A cylinder having a spring biased piston therein is mounted adjacent to the carburetor. One end of the cylinder communicates with a portion of the carburetor which is proximate to the inlet manifold. The piston is suitably linked to the choke valve. A thermostatic spring is also linked to the choke valve. When the engine is "cold" the thermostatic spring biases the choke valve to a closed position. When the engine fires and begins to run under its own power, suction in the inlet manifold, and consequently in the cylinder, will cause the piston to move against the bias of the spring and thereby open the choke valve a limited distance against the bias of the thermostatic spring. As the engine heats up, the thermostatic spring relaxes its force against the choke valve, and allows the choke valve to open the required amount for the proper functioning of the engine.

General Outline of Decision

The following portion of our decision will parallel the above-quoted basic issues which have been presented by appellant.

I. Civil Action 20,023

We are of the opinion that the Patent Office tribunals did not err in the weight accorded to and their interpretations of the findings and conclusions in *ex parte* Civil Action No. 20,023 since Henning has not shown that the facts are contrary to what was found by the district court.

We are of the opinion, and it has not been shown otherwise by appellant, that the procedure followed by Hunt in the prosecution of his case was in accordance with the existing rules. An appeal in the *ex parte* Civil Action was taken by Hunt for the purpose of correcting what Hunt felt was an erroneous decision of the Patent Office tribunals. Because of the law, Henning was not required to be a party to the civil action. Perhaps this is unfortunate inasmuch as

the civil action, in addition to deciding questions which are basically of an *ex parte* nature, also appears to have decided questions which are basically of an *inter partes* nature. This will be explained more fully hereafter. However, any fault which may be present in the procedure is strictly subject to correction by appropriate legislation, and is not a problem for judicial determination. Therefore, since all the procedure followed by Hunt was according to law, we can find no fault therein.

The conclusions of law of Civil Action 20,023 are quoted above. The conclusions 1, 2, and 3, seem to us to relate to issues which can best be determined *inter partes* since they are inherently *inter partes* problems. However, since the subject matter involved in these conclusions of law presented a hurdle which Hunt necessarily had to overcome in order to obtain his claims, and since the Board of Appeals treated this subject matter in their opinion on Hunt's *ex parte* appeal, and since the law made no provision for an *inter partes* action, it would seem that Hunt's action was perfectly proper notwithstanding the procedural quirk which resulted in obtaining an *ex parte* decision which could have best been determined *inter partes*. However, as we have stated above, the remedy, in our opinion, is by suitable legislation.

Conclusions of law 4, 5, 6, 7, and 9 seem, in our opinion, to relate to strictly *ex parte* questions. Whether the Hunt oath is proper, or whether the subject matter of the claims was disclosed in the applications, to our minds, are basically *ex parte* questions which can be decided on an absolute basis irrespective of the presence or absence of other parties. Of course, an adversary party could possibly point out reasons and applicable law as to why an *ex parte* appellant should not be entitled to certain claims or why an application was improper. However, the fact remains that these problems are of an inherently *ex parte* nature, and as such are capable, in our minds, of *ex parte* determination. It is to be noted that we have referred to *ex parte* issues

in the preceding discussion. The term *ex parte* was used in the limited sense that the interested third party, Henning, was not a party to the suit in the district court although he had been a party in previous instances.

We have set forth our preceding comments for the sole purpose of facilitating the viewing of the subsequent portions of our decision in proper perspective.

■ Appellant, Henning, argues quite vehemently that the Patent Office tribunals erred in the weight accorded to Civil Action 20,023. In this respect it is stated that the judgment in the *"ex parte"* civil action is not admissible. We cannot subscribe to this view.

The appeal, Civil Action 20,023, was taken for the purpose of reviewing the action of the Board of Appeals of the Patent Office, and the court reversed the board's decision, as noted in the above-cited conclusions of law. The court found that Hunt was entitled to the claim forming the count of this interference. The commissioner (and the patent office tribunals) cannot question the court's decision; their failure or refusal to execute it by appropriate action would undoubtedly be corrected by judicial process; the decree of the court is the final adjudication on the question of right. Butterworth v. United States ex rel. Hoe, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656. If the Patent Office tribunals did not follow the court's decision, it would be tantamount to reversing its appellate court. This obviously would be an anomaly, and in effect cause the court's decision to be a nullity. For the orderly administration of the law, the giving full force to the court's decision was the only course which the patent office tribunals could have followed, unless of course, new issues and facts were presented in the *inter partes* action which were not considered in the *ex parte* action.

■ We might state, at this point, that we will not directly consider any questions in this appeal which were determined in the above-mentioned civil action. To do so, and pass judgment thereon would in effect cause us to be an appellate tribunal of the district court. Obviously this is not our function. We must therefore take the decision of the district court as we find it, and consider only those questions, based on different facts, which arose in the Patent Office after the court's decision. We will also, for the sake of completeness review the applicable law.

■■ As stated above, once the district court's decision was rendered, it governed further proceedings in the Patent Office. Since both parties, Hunt and Henning, were entitled to a claim possessing identical terminology, it became necessary for the Patent Office tribunals to institute an interference proceeding, assuming, of course, that an interference in fact existed. (This will be treated in greater detail hereafter.) However, assuming at the present time that an interference in fact did exist, we feel that the Commissioner correctly did make Hunt the senior party since he had the earlier filing date. To have done otherwise, would in essence have amounted to giving effect to one portion of the court's decision (that the claim was allowable to Hunt) and at the same time not giving effect to the court's finding that Hunt was entitled to the filing date of his earlier application. As we have stated above, the Patent Office tribunals had no choice in the matter; their duty was to follow the court's decision. Therefore it follows that since Hunt by virtue of the court's decision became entitled to a filing date which was earlier than Henning's, and since an interference was declared between the two, we feel that it was not only proper but mandatory that Hunt be made the senior party, it being well-settled that the party who has the earlier filing date is the senior party. Again, to have done otherwise would have made a nullity of both the decision of the court and the rules of practice. In this respect we wish to cite Harnsberger v. Youker, 109 F.2d 806, 27 C.C.P.A., Patents, 923, wherein this court approved the action of the Commissioner of Patents who exercised his supervisory au-

thority to cause the party who was entitled to an earlier filing date to be made the senior party to an interference notwithstanding that his second application was not a "technical continuation-in-part" of an earlier filed application.

The situation presented above, namely, the giving of full effect of an *ex parte* appeal to the *ex parte* appellant by the tribunals of the Patent Office, said appeal having been taken after *inter partes* proceeding occurred, was considered in Messler & Isherwood v. Charman, 162 Ms.D. 820 (Patent Office Manuscript Decision of December 8, 1937). Since the fact situation in that case is generally similar to the situation here, we find it expedient to quote that decision *in toto:*

"The party Charman petitions that the Commissioner either direct the examiner of interferences to render judgment on the record against the party Messler et al as requested in petitioner's motion for judgment, or instruct the primary examiner to pass adversely upon a motion by Messler et al to dissolve, without an oral hearing thereon.

"The interference is between an application of petitioner and a patent to Messler et al No. 1,893,206. Petitioner [Charman] is the senior party.

"In an earlier interference, No. 66,227, petitioner's application was involved with another patent to Messler et al, No. 1,893,207. In that interference petitioner moved to declare an additional interference between his application and the Messler et al patent, No. 1,893,206, here involved, the proposed issue being claims 12 to 17, inclusive, of petitioner's application which he had copied from the last mentioned Messler patent. Petitioner's motion was denied on the ground that he had no right to make the copied claims. The denial of this motion was affirmed by the Board of Appeals. Petitioner then prosecuted these claims ex parte and after the same were rejected by the tribunals of this Office he appealed to the Court of Customs and Patent Appeals and there received a favorable decision. [In re Charman, 24 C.C.P.A., Patents, 1162, 89 F.2d 667, 53 U.S.P.Q. 380]. Thereupon the instant interference was instituted. Upon opening the preliminary statement it was found that Messler et al had alleged no date prior to the filing date of petitioner, and Messler et al were thereupon placed under order to show cause why judgment should not be rendered against them. In response to this order they filed a motion to dissolve on the ground that petitioner has no right to make the claims in issue, and thereafter petitioner filed a motion for judgment on the record in view of the decision of the Court of Customs and Patent Appeals upholding his right to make the claims. The motion to dissolve has been set for hearing on December 10, 1937, before the primary examiner.

"Counsel for Messler et al contends that the right of petitioner to make the claims is not res judicata by reason of the decision of the Court of Customs and Patent Appeals since Messler et al were not a party in the proceeding before the Court. While this may be true, *it is nevertheless deemed that the ruling made by the Court constitutes the law of the case so far as the tribunals of this Office are concerned. That ruling will, therefore, not be reviewed by this Office on a motion in the interference proceeding.*

"The hearing on the motion is canceled and the examiner of interferences is directed to take action on the motion of the petitioner for judgment. To this extent the petition is granted. [Matter in brackets and italics added]."

Another case which has a similar factual situation to the one at bar is Armstrong v. Levy, 58 App.D.C. 293, 29 F.2d 953, 954. Previous to the cited *inter partes* case, Levy copied claims of the

*Armstrong* application. The Primary Examiner and the Board of Appeals held that Levy could not make the claims, among other things, for the reason that when certain terminology of the claims was viewed in the light of the Armstrong disclosure, it could not be supported by the Levy disclosure. It appears that this was an *inter partes* decision. However, it is stated in the case that "Upon affirmance of the Board's decision by the Commissioner, an appeal *ex parte* was prosecuted to this court ([In re Levy] 55 App.D.C. 137, 2 F.2d 939), where it was held that the Patent Office erred in reading limitations into the broad claims of the Armstrong application." Thus Levy was found, by an *ex parte* appeal to the court, entitled to make the claims which he copied from Armstrong. Levy obtained the benefit of an earlier filing date and was therefore made the senior party. There seems to have been no dispute as to the propriety of the action in making Levy the senior party, Levy relying on the filing date of a foreign application. The *Armstrong v. Levy* case, supra, was thereafter instituted, and the court said, "Our decision in the ex parte proceeding was necessarily based upon the theory that the Levy application did disclose these features, but that decision, of course, is not res judicata here, since Armstrong was not and could not have been a party." Thereupon the court proceeded to analyze both the Armstrong and Levy structures *inter partes*, and came to the conclusion that Levy was entitled to the claims and to priority of the invention. Thus it appears that the court, after determining *ex parte* that Levy was entitled to the claims, again analyzed the claims *inter partes*, for the reason, we believe, of finally determining whether the claims, although they read on each application when taken by itself, meant the same thing when they were analyzed in the light of both applications taken together. In other words, we believe that both applications were analyzed to see whether an interference in fact did exist. More specifically, while each application independently supported the claims, it was desirable to subsequently determine *inter partes* whether both applications would support the claims in the same sense when they were both considered at the same time. We intend to make a similar analysis hereafter under the appropriate heading. However, to indicate that a situation is not at all remote where two parties may have the same claims but an interference does not exist, we call attention to the case of Allfree v. Sarver, 1906 C.D. 214. In that case applicant became entitled to a patent containing the same claims of the patentee because of the sustaining of a motion to dissolve on the ground that there was no interference in fact. Since both parties were therefore entitled to the same claims, the Commissioner took jurisdiction for causing the claims to be amended in order to prevent the issuance of another patent with the same claims.

We also wish to point out, at this point that a similar *ex parte* and *inter partes* situation was presented in Avery v. Chase, infra, wherein the Patent Office tribunals gave full effect to an *ex parte* appeal in a subsequent *inter partes* action.

■ Thus, we are of the opinion that the effect given to Civil Action 20,023 by the Patent Office was the only course which could have been followed, and since Henning did not show that a contrary state of facts existed from what was found by the district court, we feel that Civil Action 20,023 properly governed further proceedings of the Hunt-Henning interference notwithstanding that Henning was not a party to the civil action.

■ This brings us to the question 1 (a) posed by Henning, namely, whether the Patent Office made an error of law in relieving the party Hunt of the necessity of proving, *inter partes*, the alleged inherency of his disclosure of the critical element of the count since the structure of the Hunt device was not described in the identical terminology of the critical portion of the count.

In this respect appellant states in his brief:

"* * * there is no language in the Hunt-Olson application, as filed, which states, or would teach an expert in the carburetor art, that piston 42 constitutes 'means for opening said choke valve a limited distance only' as required by the count. However, counsel for Hunt contends that since suction piston 42, acting through lever 48, moves toggle knee joint well beyond dead center position, in breaking the toggle, and the toggle is connected to the choke valve so that the toggle and choke must move together, as will be the case as if all joints are tight, then the piston must be the means for opening the choke a limited distance."

We feel that the case of Coast v. Dubbs, 88 F.2d 734, 738, 24 C.C.P.A., Patents, 1023, is particularly applicable. In that case it was stated, "Under all the facts of this case, we think a *prima facie* showing of inherency was made in the application of Dubbs [the senior party], and that it was, therefore, incumbent upon Coast as the junior party to show lack of inherency, and if he failed so to do we think the decisions below are correct * * *." In the Coast v. Dubbs case, supra, it was found by various tribunals of the Patent Office that certain subject matter was inherent in the Dubbs disclosure, and this court held, as noted above, that the burden was on Coast to show lack of inherency because of the *prima facie* showing of inherency based on the decisions of the Patent Office tribunals. In the present case the decision of the district court in Civil Action 20,-023 must be considered at the very least equivalent to the *prima facie* showing by the Patent Office tribunals in the Coast v. Dubbs case. Therefore, under the doctrine of the cited case it certainly appears that the burden of showing lack of inherency was on Henning, the party who urged lack of inherency.

A review of the present record discloses that Henning produced the testimony of many witnesses for the purpose of attempting to prove that Hunt's device did not operate in the manner contended by Hunt. It is to be noted in the present case that after reviewing the testimony the board stated:

. "Henning has offered much evidence which he contends establishes that this action [the opening of Hunt's choke valve by the direct action of suction] does not occur or is negligible * * * we hold that Hunt [obviously meaning Henning] has failed to establish that the court was not correct in concluding, in Civil Action 20,023, that the subject matter of claim 22, now the single count here in issue, is completely disclosed in the Hunt and Olson application and in the Hunt application * * *." [Brackets added.]

We do not feel that it was necessary for Hunt to prove inherency of operation of his device, but that it was incumbent on Henning to show lack of inherency under the rule of Coast v. Dubbs, supra, especially in view of findings of fact 17 and 18 or Civil Action 20,023, supra. The board did not feel that Henning sustained his burden, and we, on review of the record, are of the same opinion.

We also feel that the case of Pew v. Gard, 97 F.2d 591, 594, 25 C.C.P.A., Patents, 1326, is applicable in the foregoing respect. In that case it is stated:

"If the involved invention is inherent in Seguy's [Gard et al., the senior parties'] disclosure, as held by the Board of Appeals, he is entitled to make the counts. The issue of inherency was raised by appellant's [Pew's] motion to dissolve the interference [this being analogous to the situation at bar]. Accordingly, the burden was upon appellant, the moving party, to establish that the invention is not inherent in Seguy's disclosure. Coast v. Dubbs, 88 F.2d 734, 24 C.C.P.A., Patents, 1023. See also Williams v. Handschiegl, 48 F. 2d 395, 397, 18 C.C.P.A., Patents, 1176; McCreary v. Zworykin, 55 F. 2d 445, 19 C.C.P.A., Patents, 990, 997; Doherty v. Dubbs, 68 F.2d 373,

21 C.C.P.A., Patents, 807, 813."
[Matter in brackets added.]

It is to be noted at this point, relative to the above argument of Henning's that the burden of proof of inherency should be on Hunt, that Henning has cited no authorities directly in support of his argument. As a matter of fact, according to the above-cited cases, the weight of authority seems to be that the burden of proof was on Henning to show lack of inherency since he raised the issue. That he seemed cognizant of the burden is evidenced by the extensive testimony which he produced. However, we feel, as stated above, that he failed to meet his burden. The case of Keeling v. Heid, 118 F.2d 571, 28 C.C.P.A., Patents, 1008, cited by Henning, can readily be distinguished. In that case it was held that in an interference proceeding, the burden of proving inherency was on the party contending that apparatus which was diagrammatically shown in the application inherently operated to perform the process of the invention. This is not the situation in the case at bar. In this action Hunt is not attempting to prove inherency since it has been found that he is entitled to the claim. On the contrary, Henning has raised the issue of lack of inherency, and it is our belief, according to the foregoing authorities, that Henning was properly subjected to the burden of proving lack of inherency. It seems from all of the foregoing cases considered as a whole that it has been uniformly held that the party raising the issue is subject to the burden of proving his contention.

## II. Do The Hunt and Hunt-Olson Applications, In Fact Support The Count?

Before proceeding further, we feel that it is necessary to restate the above question because it does not clearly portray the real issue. It has already been found in findings of fact 17 and 18 of Civil Action 20,023, supra, that both the Hunt-Olson application and the Hunt application show a construction wherein a suction actuated piston positively opens the choke valve a limited distance only. We will not interfere with this finding since Henning has not shown a contrary state of facts to exist. Therefore the question rephrased should state: When the Hunt and Hunt-Olson applications are compared with the Henning patent, does the critical limitation of the count, "suction operated means for opening said choke valve a limited distance only," mean the same thing in the light of both the Hunt and Henning disclosures? In other words, does an interference in fact exist, or is it because of a quirk in semantics that the critical portion of the count when viewed in the light of the individual disclosures, reads on them individually, but does not mean the same thing when viewed in the light of all of the disclosures viewed as a whole, thus presenting a situation analogous to that discussed in Allfree v. Sarver, supra?

We are of the opinion that the critical portion of the count has the same meaning when applied to both the Henning and Hunt structures.

We must again state at this point that to analyze the count solely in the light of the Hunt and Hunt-Olson applications to determine the above question posed by Henning, this in essence being what Henning requests, would be to review the decision of the district court in Civil Action No. 20,023 especially since no new facts have been presented which are convincing that the decision in the civil action was erroneous. However we will review the count in the light of both the Hunt and Henning disclosures to determine whether an interference does in fact exist.

We therefore refer to the above description of the individual subject matter, which we believe is an accurate portrayal thereof. However, we deem it desirable at this point in addition to the above description to quote directly from the Hunt-Olson joint application in order to be able subsequently to analyze its teachings. In the following quoted ma-

terial the matter which appears in brackets and the italicized portions are ours:

"* * * * * *

"* * * The air horn is provided with a *choke valve 18 which is fixed* [not journalled] *to a shaft 20 mounted in the air horn.* * * * *An arm 24 is fixed to shaft 20 and has a pivotal connection with a link 26 which is connected with the choke control to be described.* * * * [The choke control consists in part of] *a piston 42* [which] *is reciprocably mounted in cylinder 30 and is normally held in its uppermost position by a compression spring 44.* * * * *In operation, assuming the engine is cold and being cranked, the parts are in the position shown in Figures 1, 2, and 3, the choke valve being maintained in its fully closed position, against the air pressure tending to open it, by the toggle mechanism which prevents shaft 56 from rotating.* * * * *When an explosion occurs in the cylinders* [of the engine], *however, the manifold suction becomes greater and draws piston 42 downwardly against the force of spring 44, causing* * * * [the toggle linkage to move] *leaving shaft 56 free to rotate.* * * *"

It is to be noted at this point, although not specifically stated in the specification, that when the toggle linkage moves, shaft 56 must necessarily rotate which in turn must also cause the choke valve to open a limited distance depending on the amount of movement of the toggle linkage. That this is the mode of operation of the Hunt device was brought out on the cross examination of one of Henning's witnesses, Moseley, as follows:

"* * * * * *

"XQ10. And you have testified that when the piston is actuated, lever 48 and the end 50 engage lever 72 and moves it to the right to the extent required to unlatch the two levers? A. That is right.

"XQ11. Then, you have also stated that any movement of lever 70 and 72 to the right shortens the distance between points 68 and 74. A. That is right.

"XQ12. Point 74 is a fixed point, isn't it? A. Yes, as I remember, it is fixed.

"XQ13. Then the only point that could move would be point 68. A. Right.

"XQ14. Which is on lever 66. A. Right.

"XQ15. What direction would lever 66 move? A. Upward.

"XQ16. And when lever 66 moves upwardly, it carries with it lever 26, 24, and lever 24 is rigidly secured to shaft 20 of the choke valve; isn't that correct? A. That is right.

"* * * * * *

"XQ28. Lever 24 is fixed to the choke valve shaft, that is secured to the choke valve shaft 20, and the choke valve is secured to the choke shaft rigidly? A. Yes.

"XQ29. Isn't it true that whenever lever 24 moves, the choke valve must necessarily move? A. Right.

"* * * * * *"

■ There is no dispute that Henning's structure operates in the same manner which we have concluded that Hunt's structure operates. Therefore we are of the opinion that the critical portion of the count has the same meaning when considered in the light of both the Hunt and Henning disclosures since both devices have "suction operated means for opening said choke valve a limited distance only."

III. Is Hunt Entitled To The Benefit of The Filing Date of The Hunt-Olson Application Under The Doctrine of In Re Roberts?

■ We must answer the foregoing question in the affirmative. The above-cited conclusions of law, 6 and 7, of Civil Action 20,023 indicate that the Hunt application is a continuation of the joint Hunt and Olson application and that the oath in the Hunt application in suit is good and valid in law and properly refers to the joint Hunt and Olson applications. It is to be noted, however, that there is

no finding by the district court which specifically states that the Hunt application conforms to the requirements set forth in In re Roberts, 49 App.D.C. 250, 263 F. 646, 647. However, the record of Civil Action 20,023, which is a part of the present record, shows that the Roberts case was presented to the court by the Solicitor of the Patent Office and by Hunt in the aforementioned civil action, and was certainly not overlooked notwithstanding that it is not mentioned in the findings of fact or conclusions of law.

As we have stated above, we are of the opinion that whether or not there was conformance by Hunt with the requirements of In re Roberts is a matter of law which could very well be determined *ex parte*, as it was. For us to review the decision of the district court, in our opinion, would in effect make us the appellate court of the district court, which obviously is beyond our jurisdiction. Furthermore, Henning has not presented new facts, *inter partes*, which are convincing of error in the civil action.

However, we do deem it pertinent to set forth the facts as they appear from the record to show that in our opinion the requirements of In re Roberts were met. We do this not as a review of the district court's decision, which we accept at full face value, especially since there have been no new facts presented which would indicate that it is erroneous, but merely to succinctly crystallize the pertinent facts which are scattered throughout the complex and confusing record of this case.

In the case of In re Roberts, supra, a father and a son had filed a joint application for an invention. Their application was involved in an interference, and during the taking of testimony it appeared that the invention involved in the interference was the sole invention of the father. Priority was then awarded to the other party on the ground that the Roberts were not joint inventors. Subsequently an application was filed in the name of the father, as a continuation of the former joint application. However, the Patent Office refused to consider it as a continuation, and since the patent

of the other party to the interference had issued more than two years prior to the filing of the sole application, that patent became a statutory bar to the allowance of the sole application. On appeal to the Court of Appeals of the District of Columbia, the court stated the question for consideration to be "whether, in a case like the present, where it appears that a joint application has been filed through mistake or inadvertence and without fraudulent intent, the sole inventor, one of the joint applicants, is estopped from taking any advantage of that application." After deciding that the sole inventor was not estopped from taking advantage of the former joint application because through mistake he had given his son credit, when in fact he had not contributed to the invention, the court went on to add "that a party who seeks to correct his own mistake must act with reasonable diligence, and also assume the burden of establishing his good faith." No criterion is given for "reasonable diligence" but we note that in the Roberts case the joint application was filed in June 1912 while the sole application was filed in October 1917, a period of more than five years. In that case, then, more than five years was considered "reasonable diligence" since the decision was in favor of Roberts.

From the above review of the Roberts case it appears that there are at most four requirements for making a sole application a continuation of a joint application. These requirements are: (1) that the joint application be filed through mistake or inadvertence; (2) that it be filed without fraudulent intent; (3) that reasonable diligence be observed in correcting such mistake; and (4) that good faith be established. With reference to the first two requirements, the *actual words* "inadvertence," "mistake," and without "fraudulent intent" do not appear in the Hunt record before the affidavits filed by Hunt and Olson in March of 1950. However, in June 1934 both Hunt and Olson filed affidavits stating that the subject matter covered by the claims of the sole application of Hunt was the sole invention of Hunt and not

that of Olson, either solely or jointly. It is also noted that in the joint application a letter appears, dated June 1934, in which Hunt and Olson's attorneys requested that certain claims be cancelled because "the subject matter covered by Claims * * * was the sole invention of applicant Hunt, rather than the joint invention of Hunt and Olson." These affidavits plus the letter in the joint application would clearly seem to show that a mistake had been made in joining the two, at least as to certain claims, and certainly there was no fraudulent intent apparent since the parties acted so rapidly in correcting the record. The same portions of the record would also seem to establish diligence and good faith, at least as to those claims first included in the sole application.

Claims were added and canceled from the sole application through seven years of vigorous prosecution. These additions involved many claims copied from patents and pending applications. With each added claim, Olson did not make a new affidavit that such claims were the sole invention of Hunt, apparently on the assumption that it would be understood that only claims would be added to the sole application which were the sole invention of Hunt, especially in view of the first affidavits. But because of a question raised by the examiner in Interference No. 76,519, Olson filed another affidavit in June 1941 to the effect that all of the claims and *all of the patentable subject matter* in the sole application of Hunt was the invention of Hunt and not the invention of Olson.

In view of the foregoing, it would seem that after a number of years of working closely in the art, it was decided that whatever contribution Olson had made to the joint application was not of a patentable nature. From a review of the facts, it certainly appears that nothing new was presented by Henning to show that the requirements of In re Roberts, supra, were not met and that the Hunt sole application was not a proper continuation of the Hunt-Olson joint application.

When this entire aspect of the case is reviewed, it appears to us that a *prima facie* showing of validity of the Hunt application is evident based on the findings of Civil Action 20,023, and that Henning has not shown, *inter partes*, that a contrary state of facts existed which would cause the Hunt sole application to be invalid.

IV. Is Hunt's Assignee Barred from Further Prosecuting and Patenting The Count Because of Interference Estoppel?

■ Appellant, Henning, urges that Hunt is barred by interference estoppel and is therefore not entitled to the present count. As his reasons, Henning states that "Interferences Nos. 68,187, 68,188, 68,702, and 71,471 * * * all involved applications, owned by the assignee of the present Hunt and Hunt-Olson applications, which applications were junior to an application of Stanton, Serial No. 600,038, filed March 19, 1932, also involved therein," and that the subject matter of the present Hunt application broadly dominates the subject matter of Stanton. Appellant's theory in urging estoppel is not clear. However, it is quite clear that he relies heavily on the doctrine set forth in Avery v. Chase, 101 F.2d 205, 26 C.C.P.A., Patents, 823, and he further states that an estoppel is justified under the law of the aforementioned case.

An examination of the factual situation and holding of Avery v. Chase, supra, is therefore deemed necessary. However, before proceeding with this examination, we wish to note that it was found in Civil Action 20,023 (1st and 2nd conclusions of law) that Hunt was not estopped from making the claims. We are also of this opinion since Henning has not presented any facts in the present *inter partes* action which indicate that a finding of lack of estoppel against Hunt by the district court was not consistent with facts which were brought out in the subsequent *inter partes* action.

In Avery v. Chase, supra, an interference had been declared between an application of Chase, the application of Avery, and an application of one Friden (as-

signed to the assignee of Avery), and four other applications. In that interference Chase made no motion to bring forward another of his applications which apparently contained allowed claims which would read on both the Avery and Friden applications. While the first interference was being appealed, the Patent Office declared another interference between the second application of Chase and the same application of Friden. This interference was dissolved on Friden's motion based on estoppel against Chase for failure to bring the second application forward in the first interference. This decision was subsequently appealed *ex parte* to this court, In re Chase, 71 F. 2d 178, 21 C.C.P.A., Patents, 1183, and the decision on estoppel was reversed because of what were thought to be special circumstances notwithstanding that Chase was a party to both the earlier and later interference. When the Chase application returned to the Patent Office another interference was declared between Chase and Friden, based on the court's decision in the *ex parte* action. In this interference Friden again moved to dissolve on the ground of estoppel. However, the Patent Office tribunals felt that our decision in the *ex parte* action of In re Chase, supra, was controlling and therefore Chase was not estopped from making the claims. [Note the manner in which the *ex parte* decision was regarded by the Patent Office tribunals notwithstanding that Friden was not a party to the *ex parte* action.] Therefore, the motion to dissolve on the ground of estoppel was denied. A motion was then made by the assignee of both Friden and Avery to substitute the application of Avery for that of Friden, which motion was granted. During the subsequent proceedings Avery urged the doctrine of estoppel at each phase of the case. Priority was awarded to Chase, and an appeal to this court followed, the sole reason of appeal being that Chase was estopped from making the counts. After reviewing many of the decided cases this court held that estoppel should apply against Chase and reversed its prior *ex parte*

decision. It appears that the primary reason for holding that an estoppel existed was because both parties were participants of an earlier interference and that Chase failed to bring forward his second application in said earlier interference. Because of this failure there was no bringing forward of all the issues which could have been raised at that time.

It is to be noted at this point that Avery v. Chase, supra, and the case of International Cellucotton Products v. Coe, 66 App.D.C. 248, 85 F.2d 869, were presented in the record of Civil Action 20,-023.

Insofar as pertinent here, one basic fact stands out in both of the aforementioned cases; namely, that *some* of the parties (or their assignees) which were involved in an earlier interference were the *same* parties involved in a later interference. In Avery v. Chase, supra, it was held that an estoppel existed, as set forth above. In the Cellucotton case, a directly opposite conclusion was reached on substantially the same facts. However, we are of the opinion that neither of these cases is controlling of the present case because of the difference in facts between those cases and the present case. Therefore these cases do not have to be reexamined at the present time. While Hunt's assignee was a party to both the earlier and later interferences, it does not appear from the record (and it is not specifically pointed out in appellant's brief) that Henning's present assignee was a party to the earlier interference.

Thus assuming, as we must because of the confusing nature of the record, that Henning's assignee was not a party to the earlier interference involving the Stanton application, we cannot see how Henning at the present time can assert that Hunt should be estopped from contesting the count in issue. The doctrine of estoppel appears to be based on an extension of the principle of *res judicata* in the limited sense that both parties to the later interference must have also been parties to the earlier interference although other parties may also have been present in the earlier interference. [See the Cellucot-

ton case, supra, 85 F.2d at page 871 for a discussion of the theory of the applicability of *res judicata* as it relates to estoppel in interferences.] More specifically, a strict *res judicata* situation does not exist in interference estoppel because *all* the parties to both interferences need not have been the same, it only being necessary that the parties involved in the earlier and later interferences were among the parties participating in both of the interferences. This is broadly set forth in the following language of Dirkes v. Eitzen, 103 F.2d 520, 523, 26 C.C.P.A., Patents, 1198:

> "* * * The law on this subject was set out by this court in the case of In re Austin, 40 F.2d 756, 759, 17 C.C.P.A., Patents, 1202, 1209, as follows: '* * * it has long been the practice in the Patent Office to require a common assignee, if it desires to raise the issue of priority, to bring into an interference, to which it is a party, all of its applications, patents, and claims which it deems should be made the basis of interference between it and the other parties thereto. Ex parte Temple and Goodrum, decided November 11, 1911, 176 O.G. 526, 1912 C.D. 70; Frickey v. Ogden, 1914 C.D. 19, Vol. 199, O.G. 307. Furthermore, if a party to an interference fails to comply with the rules of the Patent Office relative to the presentation of such claims, it is thereafter estopped from presenting them as a basis for another interference *between the same parties*. Ex parte Temple and Goodrum, supra; Frickey v. Ogden, supra; New Departure Manufacturing Co. v. Robinson, 39 App.D.C. 504; In re Capen, 43 App.D.C. 342; In re Wasserfallen, 54 App.D.C. 367, 298 F. 826, 828; Application of Doble, 57 App.D.C. 10, 16 F.2d 350.' * * *" (Italics added.)

However, it is to be noted that Avery v. Chase, supra [101 F.2d 213,] refers to the doctrine of *res judicata* with respect to interference estoppel as follows: "* * * estoppel is not restricted to the application of the doctrine of res adjudicata." When this statement is analyzed in it proper context in the case it must necessarily be limited to a situation where both parties were participants in both earlier and later interferences but other parties were present in the earlier interference thus negating the strict applicability of the doctrine of *res judicata* since *all* the parties to both interferences were not the *same*. Were it otherwise, an impossible situation could be created where a first party would be estopped from contesting counts in a later interference between himself and a second party, whom said first party had never met before in the earlier interference, thus denying the first party the right to contest priority of the invention through no fault of his own.

In view of the foregoing, we are of the opinion that an interference estoppel situation does not exist in the present case since no facts have been presented by appellant subsequent to Civil Action 20,023 which would warrant such a finding.

## V. Has Hunt Proven Priority over Henning?

 The foregoing question does not appear to be strictly accurate since Hunt is the senior party to the interference. The question rephrased should read: Has Henning proved priority over Hunt?

The board found that Hunt was entitled to a date of conception "at least as early as October 3, 1931." The board also found that Henning was entitled to a date of conception as of October 14, 1931. The application relied on by Hunt was filed on November 14, 1931; the application relied on by Henning was filed on November 17, 1931. The board concluded, after an exhaustive review of the evidence that since Hunt was the first to conceive the invention and the first to constructively reduce it to practice that he was entitled to the award of priority.

We have reviewed the evidence as it appears in the record and the arguments relative thereto presented in appellant's brief. However, we are not convinced that there was error in the finding of the above facts.

For the foregoing reasons we are of the opinion that the decision appealed from should be affirmed.

Affirmed.